DUNAWAY, superintendent, *v.* GORE; *et vice versa.*

1. Construing the terms of sections 1 and 4 of the act of August 16, 1924 (Ga. L. 1924, p. 195), as referring to 'the State Prison Farm located near Milledgeville, and as conferring the authority expressed in section 4 on any warden of said prison, including the superintendent thereof who is the warden of the male camp of the penitentiary, the execution, by that superintendent, of the sentence for murder, would not deprive the condemned person of due process of law.

2. There is no merit in the alleged grounds of attack upon the constitutionality of the act of 1924. There being no provision in the constitution conferring upon sheriffs of counties the power to execute sentences of the courts in capital cases, the manner of execution of such sentences is for legislative enactment, as is the matter of defining the crime of murder and providing for its punishment.

3. The petition failed to allege a cause of action, and the judge erred in overruling the demurrer.

4. Assignments of error upon constitutional questions raised for the first time in the bill of exceptions can not be considered.

5. Language used by the trial judge in an opinion filed with his judgment, even if it announced an incorrect principle of law, was not a judgment on which error could be assigned.

Nos. 5810, 5814. APRIL 20, 1927. REHEARING DENIED MAY 6, 1927.

Injunction. Before Judge Park. Baldwin superior court. December 4, 1926.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, J. B. Duke, solicitor-general, John A. Boykin, solicitor-general, E. A. Stephens, T. E. Patterson,* and *J. W. Le-Craw,* for· Dunaway.

*W. A. James, L. S. James, R. A. Garland,* and *L. S. Maritzer,* contra.

RUSSELL, C. J. . 1. M. M. Gore, upon being convicted of murder, was sentenced to be executed "by the warden of" the "penitentiary" of the State of Georgia, "by electrocution in private within the walls of said penitentiary at Milledgeville, Georgia." The sentence was about to be executed by B. H. Dunaway as a warden of the penitentiary. In a petition by Gore for the writs of injunction and prohibition to prevent the execution of the sentence by Dunaway, it was alleged that Dunaway was superintendent of the penitentiary at Milledgeville but was not the warden

Criminal Law, 16 C. J. p. 61, n. 12; p. 1351, n. 49; p. 1378, n. 72; p. 1379, n. 81 New, 95, 96; 17 C. J. p. 26, n. 31; p. 50, n. 48; p. 53, n. 85. Injunctions, 32 C. J. p. 285, n. 56.
Officers, 29 Cyc. p. 1381, n. 74.
Prohibition, 32 Cyc. p. 625, n. 70.

of said penitentiary at Milledgeville, and that there was no warden at the penitentiary at Milledgeville, and consequently that Dunaway was without authority to execute the sentence of the court, and to allow him to do so "said petitioner Gore will be denied due process of law." In connection with what is stated above, the petition contained the substance of certain resolutions of the board of Prison Commissioners of Georgia and other documents, which showed that at the time in question B. H. Dunaway was superintendent of the State Prison Farm at Milledgeville and also warden of the male camp at said farm. It is provided in the act approved August 16, 1924 (Acts 1924, p. 195): "Section 1. . . all persons convicted, after the passage of this act, of a capital crime and have imposed upon them the sentence of death, shall suffer such punishment by electrocution within the walls of the State Penitentiary, at Milledgeville, Georgia, or wherever the State Penitentiary may be located, instead of hanging. . . Section 4. . . there shall be present at such execution the warden of the penitentiary, who shall serve as executioner. . ." These provisions of the statute have been construed in *Howell* v. *State,* ante, 204 (138 S. E. 206), as referring to the State Prison Farm located near Milledgeville, and as conferring the authority expressed in section 4 of the act upon "any warden of said prison," including "the superintendent of said prison who is the warden of the male camp of said penitentiary." Under this construction of the law the execution of Gore by Dunaway would not deprive him of due process of law.

2. Paragraph ten of the petition alleges that the said act of 1924 is "unconstitutional," because (a) "there is no legal machinery now in force in the State of Georgia . . to carry the sentence in this case into execution. There is no such person as the warden of the penitentiary. . . The act contemplates the warden of the penitentiary of this State. It does not by its language say that the wardens of the various departments have the authority to execute any condemned person. . ." (b) Because "the act strips the sheriff of the counties of Georgia of the authority to execute a condemned person, and it does not specially designate any official with the power to act with that authority." The first of the foregoing grounds of attack is disposed of by the ruling in the first headnote. The second ground of attack is also

without merit, there being no provision in the constitution conferring upon sheriffs of counties the power to execute the sentences of the court in capital cases. The manner of execution of such sentences in this State is for legislative enactment, as is the matter of defining the crime of murder and providing for its punishment.

3. Applying the foregoing rulings, the petition failed to allege a cause of action, and the judge erred in overruling the general demurrer to the petition.

4. The rulings announced in the preceding paragraphs apply also to the assignments of error in the bill of exceptions filed by Gore.

5. Assignments of error upon constitutional questions which are raised for the first time in the bill of exceptions will not be considered. *Loftin* v. *Southern Securities Co.*, 162 *Ga.* 730 (134 S. E. 760); *Puckett* v. *State Banking Co.*, 130 *Ga.* 586 (61 S. E. 465).

6. In the bill of exceptions filed by Gore error was also assigned upon the statement of the judge: "I hold that the act of 1924, substituting electrocution for hanging, is constitutional and legal." This language of the judge contained in his opinion was not a judgment upon which error could be assigned. *Griffith* v. *Finger*, 115 *Ga.* 592 (41 S. E. 993); *Hendricks* v. *Jackson*, 139 *Ga.* 604 (77 S. E. 816). And even if it announced an incorrect principle of law, it would not be a proper subject for review under this assignment of error.

7. The foregoing rulings result in a reversal of the judgment of the trial court overruling the general demurrer as complained of in the bill of exceptions filed by Dunaway, and in an affirmance of the judgment of the trial court on questions raised in the bill of exceptions filed by Gore, in so far as that bill of exceptions contains assignments of error sufficient to raise any question for decision by this court.

*Judgment in Case No. 5810 reversed. Judgment in case No. 5814 affirmed. All the Justices concur.*

RUSSELL, C. J., specially concurring. The foregoing syllabus expresses the opinion of the court. For the reasons stated in *Howell* v. *State, supra,* I do not concur in the statement that as a matter of law any warden or the superintendent of the prison farm is the proper person to act as executioner within the terms

of the act of 1924 (Acts 1924, p. 195). But in my opinion this does not affect the result.

On November 12, 1926, M. M. Gore, having been convicted of murder in the superior court of Fulton County, was sentenced to be executed between the hours of 10 o'clock a. m. and two o'clock p. m. on November 26, 1926, "by the warden of" the "penitentiary" of the State of Georgia "by electrocution, in private within the walls of said penitentiary, at Milledgeville, Georgia." At the dates above mentioned B. H. Dunaway was acting under a commission issued, January 1, 1923, by the Prison Commission of Georgia, appointing him "warden of the male camp at the State Farm, Milledgeville, Georgia." The following occurred in reference to the offices and tenure of office by Dunaway as superintendent and warden: A resolution was passed by the Prison Commission, May 10, 1922, which rescinded a former resolution adopted September 29, 1921, and declared "that the offices of superintendent and warden be separated," that "the deputy wardens of the several departments shall be raised to the position of warden," and that "the superintendent shall have charge of the management of the farm and shall direct its operation. He shall have general supervision over the wardens and employees of the farm and shall discharge all duties imposed upon him by the resolution of September 28th, 1921, . . except those specially under charge of the warden, such as custody of prisoners and their discipline." Also, that "the salaries of the superintendent and wardens shall be $100 per month," and that B. H. Dunaway "was elected superintendent." On December 20, 1922, another resolution was passed by the Prison Commission which declared: "Whereas, R. N. Etheridge, warden of the male camp at State Farm, has resigned, effective January 1st, 1922, it is ordered that the office of warden of said camp be filled by B. H. Dunaway, the superintendent of the farm, in addition to his duties as superintendent, and that his salary as superintendent and warden be $1800.00 per annum, beginning January 1st, 1923." On April 1, 1925, the Prison Commission passed the following resolution: "It is ordered by the Commission that the salary of the superintendent and warden of the State Farm be fixed at $200.00 per month, $100.00 as warden and $100.00 as superintendent." On February 13, 1925, Dunaway executed separate official bonds with

an indemnity company as surety on each, one for the faithful discharge of his duties as superintendent of the State Prison Farm at Milledgeville, Georgia, and the other for the faithful discharge of the duties of warden at the male camp of the State Prison Farm at Milledgeville, Georgia.

When the sentence of the court above mentioned was about to be executed, Gore instituted a suit against Dunaway for injunction and prohibition to prevent the execution, on the ground that there is no warden of the State Prison Farm and no warden to carry out the sentence of the court, but that Dunaway is in possession of the said order of the court and is threatening to carry out its terms, and that his act in doing so will be an illegal act, without authority, and not within the scope of his duties as superintendent of the farm, and that Gore will be denied due process of law. The petition also set forth a copy of the act of 1924 (Acts 1924, p. 195), relating to punishment by electrocution, and made special reference to section four of the act, which is as follows: "That there shall be present at such execution the warden of the penitentiary, who shall serve as executioner, and at least two assistants, two physicians to determine when death supervenes, an electrician, a suitable guard, and, if the condemned person so desires, his counsel, relatives, and such clergymen and friends as he may so desire." In paragraph 10 of the petition it was alleged that the act above referred to "was enacted for the purpose of changing the mode of execution of condemned persons as set out above and in Penal Code Section: Article 26, Sections 1069, 1070, 1072, and death penalty in section 63 of the Penal Code of Georgia, 1910," and "is unconstitutional, in that there is no legal machinery now in force in the State of Georgia, at this time, to carry the sentence in this case into execution. There is no such person as the warden of the penitentiary. Petitioner avers that the act contemplates the warden of the penitentiary of this State. It does not by its language say that the warden of the various departments has the authority to execute any condemned person. Petitioner further shows that the act strips the sheriff of the counties of Georgia of the authority to execute a condemned person, and it does not specially designate any official with the power to act with that authority—and that no such office as warden of the penitentiary now exists and did not at the time of the enact-

ment of the law referred to herein, and there is not now in fact any person or official who has that power, and for that reason said act and sentence herein is unconstitutional." Except as just stated, the petition did not contain any other allegation attacking the act of 1924 or the authority of Dunaway as warden as being unconstitutional. The defendant filed a demurrer and answer. The demurrer contained one ground alleging that the petition failed to allege any reason for the grant of the relief prayed, and the substance of this was elaborated in other grounds of the demurrer. Another part of the demurrer was on the ground that equity will not enjoin or interfere with the administration of the criminal law. At a hearing the demurrer was overruled, and, upon facts as sufficiently set forth above, the judge granted an order, December 4, 1926, continuing of force a former restraining order "until the proper constituted authorities of this State, through the Prison Commission of Georgia, elect 'the warden of the State Penitentiary,' as provided by the laws of Georgia, and until further order of this court on a proper proceeding to modify this order." The order just mentioned also contained an elaborate opinion by the judge, in which it was stated: "I hold that the act of 1924, substituting electrocution for hanging, is constitutional and legal." Also: "That the only question for me to pass upon is as follows, to wit: Is there 'the warden of the penitentiary, who shall serve as executioner,' as intended by section 4 of the act of the legislature of 1924, page 196 of said acts? If the court should answer this question in the affirmative, then the restraining order granted on November 25th, 1925, in this case should be dissolved. On the contrary, should this court answer this question in the negative, then the said restraining order should be continued in force until 'the warden of the penitentiary, who shall serve as executioner,' is elected as provided by law. This is a very important and vital issue involved in this case, for the reason that no person in Georgia can deprive the petitioner of his life under said sentence, except the warden of the penitentiary. If any other person should do this, it would be depriving him of his life without due process of law, as guaranteed to him by the constitution of the United States and the constitution of Georgia." After a discussion of the question above indicated, the judge expressed the conclusion that Dunaway was not such a warden as was contemplated by the

act of 1924, and could not lawfully execute the sentence of the court, and, having arrived at this conclusion, continued of force the restraining order as above indicated. Dunaway and Gore each excepted to the judgment. In the bill of exceptions filed by Dunaway error was assigned upon the judgment overruling the demurrer. The bill of exceptions also quoted specific excerpts from the opinion delivered by the judge, and, referring to each of them, alleged that the court "erred," and that the plaintiff in error assigns error upon the ruling, without alleging any specific ground of error. In the bill of exceptions filed by Gore it is stated: "Plaintiff in error acquiesces to those portions of the above order which declare the holding of the office of warden of the male camp by B. H. Dunaway illegal, and to those portions which hold that he can not legally execute plaintiff in error, as well as to the grounds therein stated for so holding. To the following portion of said order, however, plaintiff in error excepted, now excepts, and assigns same as error as being contrary to law now in force in Georgia: 'I hold that the act of 1924, substituting electrocution for hanging, is constitutional and legal.' Plaintiff in error assigns the foregoing excerpt from the court's ruling as error, upon the ground that it is contrary to: 'Art. 1. Bill of Rights. Rights of the Citizen. Section 6359. Paragraph 3. Life, Liberty, and Property. No person shall be deprived of life, liberty, or property, except by due process of law.' Civil Code Georgia (1910); and upon the further ground that the said excerpt is contrary to: 'Art. 3. Legislative Department. Enactment of Laws. Section 6445, Par. 17, Statutes and Sections of Code, how amended. No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made.' Civil Code of Georgia (1910). In view of the fact that the act of 1924 (Georgia Laws 1924, pages 195-197 both inclusive, No. 475) fails to meet the requirements of the foregoing provisions of the constitution of Georgia, the said act is unconstitutional and void. In rendering the above portion of the decision excepted to by plaintiff in error, the court had before it for consideration the foregoing Georgia constitutional provisions. Error is further assigned on the ruling that the act

of 1924 is constitutional and legal, on the ground that it is violative of the rights of plaintiff in error under the constitution of the United States: Art. 8. Amendments, as set out in the following section of the Civil Code of Georgia (1910): 'Section 6700, Art. 14. (1) Citizenship. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' Plaintiff in error assigns as error that the court's ruling above set out is violative of the due-process clause contained in the foregoing constitutional provision. This constitutional provision was before the court when the ruling was made. Plaintiff in error excepts to the foregoing excerpt from the court's judgment, and assigns same as error upon the further ground that the said act of 1924 is in violation of the principle of constitutional law that elective officers can not be shorn of the powers and duties of their offices, and such powers and duties assigned to officers nominated to their offices by ministerial appointment, by mere act of the legislature. That the office of sheriff is an elective office under the constitution of the State of Georgia, and that among his powers and duties was the execution of criminals condemned in capital cases. Thus, the performance of his official duties was controlled by the general electorate, and the power over the office was vested in the people directly, as expressed by their suffrage as citizens. The act of 1924, in derogating from the duties of the office of sheriff by giving the warden of the State penitentiary the power and duty to execute condemned persons, diminished the vested powers of the citizens of the State as a whole. That where legislation is so drastic in its object and so far-reaching in its effect that it works a diminution of the sovereign rights of the people, it must be submitted to the people by referendum as a constitutional amendment, since they, and they alone, can alienate from themselves those powers which from time immemorial have been exercised by them. To that part of the above-named order, ruling that the act of 1924 is constitutional and legal, plaintiff in error then excepted,

now excepts, and assigns same as error on the ground that same is in violation of the constitution of Georgia, especially: 'Section 6437, Par. 8. One subject-matter expressed. No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof.' Civil Code Georgia (1910). Upon this ground that the said act does not legally divest the sheriff of the power and duty of executing condemned persons. Also upon the ground that the said act does not legally amend or specify time and place; Section 1071, Suspension when convict is pregnant; Section 1072, Warrant to issue if execution not done, all of Penal Code of Georgia (1910), according to the constitutional requirements of section 6445 Civil Code of Georgia (1910), this section was fully set out above. All of which was before the trial court when the ruling excepted to was made."

ON MOTION FOR REHEARING.

Russell, C. J. It is insisted in the motion for a rehearing that the court overlooked the contention of the plaintiff in error, Gore, that the execution of the sentence of the court by Dunaway was unauthorized and unlawful, in that it appears from the record that Dunaway was not only the warden of the male camp near Milledgeville, but that he also at the same time held a second office, that of superintendent of the prison farm. It is contended that Dunaway's incumbency in the office of superintendent of the prison farm rendered him ineligible to hold at the same time the office of warden of the male camp, by reason of which his appointment as warden was void and he was neither "the warden" as the term is used in the act of 1924, nor even "a warden" as that term is construed in *Howell* v. *State,* ante. The objection argued then is that Dunaway would be ineligible to hold two offices at the same time. In our opinion this contention can not be sustained. Two code sections relating to this subject are sections 258 and 259. The provisions of section 258, so far as relate to the matters now before us, are: "The following persons are held and deemed ineligible to hold any civil office in this State, and the existence of either of the following state of facts is a sufficient reason for vacating any office held by such person, but the acts of such person, while holding a commission, are valid as the acts of an officer de facto, viz.: . . 4. Holding other offices. Persons

holding any office of profit or trust under the government of the United States (other than that of postmaster), or of either of the several States, or of any foreign State." It is plainly to be seen that there is no inhibition contained in section 258 which would affect the present case, for subdivision four of section 258 relates only to persons holding offices of profit or trust under the government of the United States or of a sister State or of a foreign country. Section 259 relates to county officers, and forbids the holding of more than one county office at the same time. In Board v. Dobbs, 151 Ga. 53, 56 (105 S. E. 611), this court held that this section applies to county officers unless express legislative authority be given to hold two offices, and therefore does not prohibit one holding two municipal offices with express legislative authority. It is plain that section 259 has no reference to the point now sub judice, for the reason that the offices held by Dunaway are in no sense county offices. See also Long v. Rose, 132 Ga. 288 (64 S. E. 84).

In the opinion of the majority of the court Mr. Dunaway was fully authorized to act at the same time as superintendent of the prison and as the warden, and in the latter capacity to execute the sentence as provided in the act of 1924. For myself, I doubt the soundness of this proposition, but not because of any provision in section 258 or 259. It is merely my opinion, that, the General Assembly having created two distinct offices by providing salaries therefor in the act of 1920 (Acts 1920, p. 273), and in view of the further provisions of law that the superintendent of the prison farm shall have no other duty than the general direction and supervision and control of all the convicts engaged in working on the prison farm and like superintendence and control of all wardens in charge of these convicts, the superintendent is restricted to these duties alone, and for that reason the mandate of the General Assembly should in the future be obeyed, and the two positions of superintendent of the farm and the warden should be distinct and separate. The regulation provided in section 1215 is in my opinion wise and timely legislation, for the reason, if no other, that it is a matter of common knowledge, to which judicial cognizance extends, that the immense body of land upon which the State conducts farming operations near Milledgeville, and the supervision of several hundred convicts, imposes a sufficient labor and re-

sponsibility upon any incumbent of the office of superintendent of the farm, without imposing upon this officer the duty of executing all persons convicted of capital felonies in this State who by the act of 1924 shall be executed by the warden. Furthermore, it must be noted that under the express provisions of section 258 the acts of one who is ineligible to hold a civil office (and even though the holding of another office would be a sufficient reason for vacating the position held by him) are held to be valid as an officer de facto. As stated above, the writer, speaking for himself, is of the opinion that the provisions of section 1215 of the Penal Code estop the superintendent of the State prison farm from performing any other duties save those of superintendent; but the majority of the court is of a contrary mind, and of course the view of the majority controls. We are all agreed that the point is not ruled, as contended, in *Parrish* v. *Town of Adel,* 144 *Ga.* 242 (86 S. E. 1095). Furthermore, the ruling in the *Parrish* case is not applicable in this case, because the prison commission had power to make appointment of wardens as well as superintendents.

Plaintiff in error, Gore, contends that the court overlooked his contentions as to the unconstitutionality of the act of 1924 (Acts 1924, p. 195). This court did not overlook the contention, but is constrained to hold that no attack was made in the lower court upon the constitutionality of the act which permitted this court to investigate the questions. In *Georgia & Florida Railway* v. *Newton,* 140 *Ga.* 463, 466 (79 S. E. 142), a written request was made of the court to instruct the jury that section 2675 of the Civil Code (commonly known as the blow-post law) was unconstitutional, and exception was taken to its refusal. Complaint was also made because the court declined to instruct the jury "that the latter part of said section, to wit, 'and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road,' is not the law of Georgia, and is invalid and not binding on said defendant, and that the same is unconstitutional." Though several reasons were assigned in the motion for a new trial why the section in question as a whole, and the portion above quoted, were repugnant to the clause of the Federal constitution giving to Congress the power to regulate commerce, it did not appear that any reason

was urged before the court why the law in question was uncon-stitutional, or what provision of the constitution it was contended it was in violation of. This court held that the constitutionality of the act was not brought in question, and could not be reviewed here by merely requesting the court to charge that the law was unconstitutional, without urging at the time the specific reasons whereupon its unconstitutionality depended: citing *Brown* v. *State,* 114 *Ga.* 60 (39 S. E. 873), and *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103). The decision in *Brown* v. *State,* following the rul-ing in *Savannah &c. Railway Co.* v. *Hardin,* 110 *Ga.* 433, 437 (35 S. E. 681), that, before this court will undertake to pass upon the constitutionality of an act of the General Assembly, it must clearly appear from the record not only what clause of the constitution the statute is claimed to be in violation of, but it must also in like manner appear that the question so made was actually presented to the presiding judge and distinctly passed upon by him, seems to have been uniformly followed ever since. Indeed, it may be said that under the provision of our constitu-tion, art. 6, sec. 2, par. 5 (Code, § 6502), which provides that the Supreme Court "shall be a court alone for the correction of errors," that this court would in no event have jurisdiction to consider the merits of any question which is either intentionally or unintentionally omitted in the trial court. It is upon errors alleged by the complaining party to have been committed in the court below that this court must confine itself; and for this rea-son, in no view of the case could Gore, the plaintiff in error, bring for review to this court the ruling of Judge Park that the act of 1924 was constitutional, since the plaintiff in error himself, so far as appears from the record, had not properly complained in the lower court that any portion of the act of 1924 was uncon-stitutional, or pointed out as required what portion of the con-stitution was offended by the provisions of the act of 1924. The principle that this court will not pass upon the constitutionality of an act of the General Assembly unless it appears that the ques-tion was made or presented in the court below was reaffirmed in *State* v. *Henderson,* 120 *Ga.* 781 (7) (48 S. E. 334), and numerous other decisions. *Rehearing denied.*