CARR *et al. v.* THE STATE.

748

No. 9382. March 18, 1933.

O. C. Hancock and W. A. McClellan, for plaintiffs in error.

John A. Boykin, solicitor-general, J. W. LeCraw, and John H. Hudson, contra.

GILBERT, J. None of the headnotes require elaboration. It may be useful and salutary, however, to repeat in part here what was said when the case against the same parties was decided on November 21, 1932. "'It is a fundamental principle, long established, that the freedom of speech and of the press which is secured by the constitution does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. . This freedom is an inestimable privilege in a free government; without such limitation, it might become the scourge of the republic. That a State in the exercise of its police power may punish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime, or disturb the public peace, is not open to question. . . Freedom of speech and press . . does not protect disturbances to the public peace or the attempt to subvert the government. It does not protect publications or teachings which tend to subvert or imperil

the government or to impede or hinder it in the performance of its governmental duties. . . It does not protect publications prompting the overthrow of government by force; the punishment of those who publish articles which tend to destroy organized society being essential to the security of freedom and the stability of the State. . . And a State may penalize utterances which openly advocate the overthrow of the representative and constitutional form of government of the United States and the several States, by violence or other unlawful means. . . In short this freedom does not deprive a State of the primary and essential right of self-preservation; which, so long as human governments endure, they can not be denied. . . "The safeguarding and fructification of free and constitutional institutions is the very basis and mainstay upon which the freedom of the press rests, and that freedom, therefore, does not and can not be held to include the right virtually to destroy such institutions." By enacting the present statute the State has determined, through its legislative body, that utterances advocating the overthrow of organized government by force, violence, and unlawful means are so inimical to the general welfare and involve such danger of substantive evil that they may be penalized in the exercise of its police power. That determination must be given great weight. Every presumption is to be indulged in favor of the validity of the statute. . . And the case is to be considered "in the light of the principle that the State is primarily the judge of regulations required in the interest of public safety and welfare;" and that its police "statutes may only be declared unconstitutional where they are arbitrary or unreasonable attempts to exercise authority vested in the State in the public interest. . . That utterances inciting to the overthrow of organized government by unlawful means present a sufficient danger of substantive evil to bring their punishment within the range of legislative discretion, is clear. Such utterances, by their very nature, involve danger to the public peace and to the security of the State. They threaten breaches of the peace and ultimate revolution. And the immediate danger is none the less real and substantial because the effect of a given utterance can not be accurately foreseen. The State can not reasonably be required to measure the danger from every such utterance in the nice balance of a jeweler's scale. A single revolutionary spark may kindle a fire that, smouldering for a time, may

burst into a sweeping and destructive conflagration. It can not be said that the State is acting arbitrarily or unreasonably when, in the exercise of its judgment as to the measures necessary to protect the public peace and safety, it seeks to extinguish the spark without waiting until it has enkindled the flame or blazed into the conflagration. It can not reasonably be required to defer the adoption of measures for its own peace and safety until the revolutionary utterances lead to actual disturbances of the public peace or imminent and immediate danger of its own destruction; but it may, in the exercise of its judgment, suppress the threatened danger in its incipiency. . . "Manifestly, the legislature has authority to forbid the advocacy of a doctrine designed and intended to overthrow the government, without waiting until there is a present and imminent danger of the success of the plan advocated. If the State were compelled to wait until the apprehended danger became certain, then its right to protect itself would come into being simultaneously with the overthrow of the government, when there would be neither prosecuting officers nor courts for the enforcement of the law." ' " See authorities in the case cited in that opinion, and in *Dalton* v. *State,* ante, 645.

There is no constitutional right to advocate the overthrow of this government by force. Those who are determined to bring about such governmental change must proceed without such authority, to wit, by armed revolution. Armed revolution is not dependent upon constitutional authority, but is contrary thereto. The constitution of the United States declares: "The United States shall guarantee to every State in this Union a republican form of government." Art. 4, sec. 4, par. 1 (Civil Code (1910), § 6678). These defendants advocate the change from a republican to a communist or Russian soviet form of government, which is a doctrine directly in conflict with the guarantee of our constitution. The United States constitution is "the supreme law of the land," and the judges of every State are bound thereby. Art. 6, par. 2 (Civil Code (1910), § 6681). It is declared also in our State constitution. It is not necessary to define here what is meant by the phrase "republican form of government." Those who wish to pursue that subject will find clear information from the highest authority, in re Duncan, 139 U. S. 461 (11 Sup. Ct..573, 35 L. ed. 225). A prompt and unhesitating obedience to the constitution and law is

indispensable to the attainment of the objects of the creation of our government.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*