### HERNDON *v.* GEORGIA.

No. 665.   Argued April 12, 1935.—Decided May 20, 1935.

*Mr. Whitney North Seymour,* with whom *Mr. Carol King* was on the brief, for appellant.

*Mr. J. Walter LeCraw,* Assistant Solicitor General, with whom *Mr. M. J. Yeomans,* Attorney General, *Mr. John A. Boykin,* Solicitor General, and *Mr. B. D. Murphy,* Assistant Attorney General, were on the brief, for the State of Georgia, appellee.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Appellant was sentenced to a term of imprisonment upon conviction by a jury in a Georgia court of first instance of an attempt to incite insurrection by endeavoring to induce others to join in combined resistance to the authority of the state to be accomplished by acts of violence, in violation of § 56 of the Penal Code of Georgia.[1]  The supreme court of the state affirmed the judgment.  178 Ga. 832; 174 S. E. 597, rehearing denied, 179 Ga. 597; 176 S. E. 620.  On this appeal, the statute is assailed as contravening the due process clause of the Fourteenth Amendment in certain designated particulars.  We find it unnecessary to review the points made, since this court is without jurisdiction for the reason that no federal question was seasonably raised in the court below or passed upon by that court.

It is true that there was a preliminary attack upon the indictment in the trial court on the ground, among others, that the statute was in violation " of the Constitution of

---

[1] " § 56. Any attempt, by persuasion or otherwise, to induce others to join in any combined resistance to the lawful authority of the State shall constitute an attempt to incite insurrection."

" Insurrection " is defined by the preceding section.  " § 55. Insurrection shall consist in any combined resistance to the lawful authority of the State, with intent to the denial thereof, when the same is manifested, or intended to be manifested, by acts of violence."

the United States," and that this contention was overruled. But, in addition to the insufficiency of the specification,[2] the adverse action of the trial court was not preserved by exceptions *pendente lite* or assigned as error in due time in the bill of exceptions, as the settled rules of the state practice require. In that situation, the state supreme court declined to review any of the rulings of the trial court in respect of that and other preliminary issues; and this determination of the state court is conclusive here. *John* v. *Paullin*, 231 U. S. 583, 585; *Atlantic Coast Line R. Co.* v. *Mims*, 242 U. S. 532, 535; *Nevada-California-Oregon Ry.* v. *Burrus*, 244 U. S. 103, 105; *Brooks* v. *Missouri*, 124 U. S. 394, 400; *Central Union Telephone Co.* v. *Edwardsville*, 269 U. S. 190, 194–195; *Erie R. Co.* v. *Purdy*, 185 U. S. 148, 154; *Mutual Life Ins. Co.* v. *McGrew*, 188 U. S. 291, 308.

The federal question was never properly presented to the state supreme court unless upon motion for rehearing; and that court then refused to consider it. The long-established general rule is that the attempt to raise a federal question after judgment, upon a petition for rehearing, comes too late, unless the court actually entertains the question and decides it. *Texas & Pacific Ry. Co.* v. *Southern Pacific Co.*, 137 U. S. 48, 54; *Loeber* v. *Schroeder*, 149 U. S. 580, 585; *Godchaux Co.* v. *Estopinal*, 251 U. S. 179, 181; *Rooker* v. *Fidelity Trust Co.*, 261 U. S. 114, 117; *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444, 454–455, and cases cited.

Petitioner, however, contends that the present case falls within an exception to the rule—namely, that the question respecting the validity of the statute as applied by the lower court first arose from its unanticipated act

[2] *Maxwell* v. *Newbold*, 18 How. 511, 516; *Messenger* v. *Mason*, 10 Wall. 507, 509; *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238, 248; *Harding* v. *Illinois*, 196 U. S. 78, 85, 86–88.

in giving to the statute a new construction which threatened rights under the Constitution. There is no doubt that the federal claim was timely if the ruling of the state court could not have been anticipated and a petition for rehearing presented the first opportunity for raising it. *Saunders* v. *Shaw,* 244 U. S. 317, 320; *Ohio* v. *Akron Park District,* 281 U. S. 74, 79; *Missouri* v. *Gehner,* 281 U. S. 313, 320; *Brinkerhoff-Faris Co.* v. *Hill,* 281 U. S. 673, 677–678; *American Surety Co.* v. *Baldwin,* 287 U. S. 156, 164; *Great Northern Ry.* v. *Sunburst Oil Co.,* 287 U. S. 358, 367. The whole point, therefore, is whether the ruling here assailed should have been anticipated.

The trial court instructed the jury that the evidence would not be sufficient to convict the defendant if it did not indicate that his advocacy would be acted upon immediately; and that—" In order to convict the defendant, . . . it must appear clearly by the evidence that immediate serious violence against the State of Georgia was to be expected or was advocated." Petitioner urges that the question presented to the state supreme court was whether the evidence made out a violation of the statute as thus construed by the trial court, while the supreme court construed the statute (178 Ga., p. 855) as not requiring that an insurrection should follow instantly or at any given time, but that " it would be sufficient that he [the defendant] intended it to happen at any time, as a result of his influence, by those whom he sought to incite," and upon that construction determined the sufficiency of the evidence against the defendant. If that were all, the petitioner's contention that the federal question was raised at the earliest opportunity well might be sustained; but it is not all.

The verdict of the jury was returned on January 18, 1933, and judgment immediately followed. On July 5, 1933, the trial court overruled a motion for new trial. The original opinion was handed down and the judgment of

the state supreme court entered May 24, 1934, the case having been in that court since the preceding July.

On March 18, 1933, several months prior to the action of the trial court on the motion for new trial, the state supreme court had decided *Carr* v. *State*, 176 Ga. 747; 169 S. E. 201. In that case § 56 of the Penal Code, under which it arose, was challenged as contravening the Fourteenth Amendment. The court in substance construed the statute as it did in the present case. In the course of the opinion it said (p. 750):

" It [the state] can not reasonably be required to defer the adoption of measures for its own peace and safety until the revolutionary utterances lead to actual disturbances of the public peace or imminent and immediate danger of its own destruction; but it may, in the exercise of its judgment, suppress the threatened danger in its incipiency. . . . 'Manifestly, the legislature has authority to forbid the advocacy of a doctrine designed and intended to overthrow the government, without waiting until there is a present and imminent danger of the success of the plan advocated. If the State were compelled to wait until the apprehended danger became certain, then its right to protect itself would come into being simultaneously with the overthrow of the government, when there would be neither prosecuting officers nor courts for the enforcement of the law.' "

The language contained in the subquotation is taken from *People* v. *Lloyd*, 304 Ill. 23, 35; 136 N. E. 505, and is quoted with approval by this court in *Gitlow* v. *New York*, 268 U. S. 652, 669.

In the present case, following the language quoted at an earlier point in this opinion to the effect that it was sufficient if the defendant intended an insurrection to follow *at any time*, etc., the court below, in its original opinion, (178 Ga. 855) added—" It was the intention of this law to arrest at its incipiency any effort to overthrow the state

446

government, where it takes the form of an actual attempt to incite others to insurrection." The phrase "at any time" is not found in the foregoing excerpt from the *Carr* case, but it is there in effect, when the phrase is given the meaning disclosed by the context, as that meaning is pointed out by the court below in its opinion denying the motion for a rehearing (179 Ga. 600), when it said that the phrase was necessarily intended to mean within a reasonable time—" that is, within such time as one's persuasion or other adopted means might reasonably be expected to be directly operative in causing an insurrection."

Appellant, of course, cannot plead ignorance of the ruling in the *Carr* case, and was therefore bound to anticipate the probability of a similar ruling in his own case, and preserve his right to a review here by appropriate action upon the original hearing in the court below. It follows that his contention that he raised the federal question at the first opportunity is without substance, and the appeal must be dismissed for want of jurisdiction.

*Dismissed.*

Mr. Justice Cardozo, dissenting.

The appellant has been convicted of an attempt to incite insurrection in violation of § 56 of the Penal Code of Georgia. He has been convicted after a charge by the trial court that to incur a verdict of guilt he must have advocated violence with the intent that his advocacy should be acted on immediately and with reasonable grounds for the expectation that the intent would be fulfilled. The appellant did not contend then, nor does he contend now, that a statute so restricted would involve an unconstitutional impairment of freedom of speech. However, upon appeal from the judgment of conviction the Supreme Court of Georgia repudiated the construction adopted at the trial and substituted another. Promptly thereafter the appellant moved for a rehearing upon the ground that the substituted meaning made the

statute unconstitutional, and in connection with that motion invoked the protection of the Fourteenth Amendment. A rehearing was denied with an opinion which again construed the statute and again rejected the construction accepted in the court below. Now in this court the appellant renews his plaint that the substituted meaning makes the statute void. By the judgment just announced the court declines to hear him. It finds that he was tardy in asserting his privileges and immunities under the Constitution of the United States, and disclaiming jurisdiction dismisses his appeal.

I hold the view that the protection of the Constitution was seasonably invoked and that the court should proceed to an adjudication of the merits. Where the merits lie I do not now consider, for in the view of the majority the merits are irrelevant. My protest is confined to the disclaimer of jurisdiction. The settled doctrine is that when a constitutional privilege or immunity has been denied for the first time by a ruling made upon appeal, a litigant thus surprised may challenge the unexpected ruling by a motion for rehearing, and the challenge will be timely. *Missouri* v. *Gehner*, 281 U. S. 313, 320; *Brinkerhoff-Faris Trust & Savings Co.* v. *Hill*, 281 U. S. 673, 678; *American Surety Co.* v. *Baldwin*, 287 U. S. 156, 164; *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.*, 287 U. S. 358, 367; *Saunders* v. *Shaw*, 244 U. S. 317, 320. Within that settled doctrine the cause is rightly here.

Though the merits are now irrelevant, the controversy must be so far explained as to show how a federal question has come into the record. The appellant insists that words do not amount to an incitement to revolution, or to an attempt at such incitement, unless they are of such a nature and are used in such circumstances as to create " a clear and present danger " (*Schenck* v. *United States*, 249 U. S. 47, 52) of bringing the prohibited result to pass. He insists that without this limitation a statute so lack-

448

ing in precision as the one applied against him here is an unconstitutional restraint upon historic liberties of speech. For present purposes it is unimportant whether his argument be sound or shallow. At least it has color of support in words uttered from this bench, and uttered with intense conviction. *Schenck* v. *United States, supra;* cf. *Whitney* v. *California,* 274 U. S. 357, 374, 375; *Fiske* v. *Kansas,* 274 U. S. 380; *Gitlow* v. *New York,* 268 U. S. 652, 672, 673; *Schaefer* v. *United States,* 251 U. S. 466, 482. The court might be unwilling, if it were to pass to a decision of the merits, to fit the words so uttered within the framework of this case. What the appellant is now asking of us is an opportunity to be heard. That privilege is his unless he has thrown it away by silence and acquiescence when there was need of speech and protest.

We are told by the state that the securities of the Constitution should have been invoked upon the trial. The presiding judge should have been warned that a refusal to accept the test of clear and present danger would be a rejection of the restraints of the Fourteenth Amendment. But the trial judge had not refused to accept the test proposed; on the contrary, he had accepted it and even gone a step beyond. In substance he had charged that even a present " danger " would not suffice, if there was not also an expectation, and one grounded in reason, that the insurrection would begin at once. It is novel doctrine that a defendant who has had the benefit of all he asks, and indeed of a good deal more, must place a statement on the record that if some other court at some other time shall read the statute differently, there will be a denial of liberties that at the moment of the protest are unchallenged and intact. Defendants charged with crime are as slow as are men generally to borrow trouble of the future.

We are told, however, that protest, even if unnecessary at the trial, should have been made by an assignment of

error or in some other appropriate way in connection with the appeal, and this for the reason that by that time, if not before, the defendant was chargeable with knowledge as a result of two decisions of the highest court of Georgia that the statute was destined to be given another meaning. The decisions relied upon are *Carr* v. *State (No. 1)*, 176 Ga. 55; 166 S. E. 827; 167 S. E. 103, and *Carr* v. *State (No. 2)*, 176 Ga. 747; 169 S. E. 201. The first of these cases was decided in November, 1932, before the trial of the appellant, which occurred in January, 1933. The second was decided in March, 1933, after the appellant had been convicted, but before the denial or submission of his motion for a new trial. Neither is decisive of the question before us now.

*Carr* v. *State, No. 1,* came up on demurrer to an indictment. The prosecution was under § 58 of the Penal Code, which makes it a crime to circulate revolutionary documents.* All that was held was that upon the face of the indictment there had been a wilful incitement to violence, sufficient, if proved, to constitute a crime. The opinion contains an extract covering about four pages from the opinion of this court in *Gitlow* v. *New York, supra.* Imbedded in that long quotation are the words now pointed to by the state as decisive of the case at hand. They are the words of Sanford, J., writing for this court. 268 U. S. at p. 669. " The immediate danger is none the less real and substantial, because the effect of a given utterance

---

* " § 58. If any person shall bring, introduce, print, or circulate, or cause to be introduced, circulated, or printed, or aid or assist, or be in any manner instrumental in bringing, introducing, circulating, or printing within this State any paper, pamphlet, circular, or any writing, for the purpose of inciting insurrection, riot, conspiracy, or resistance against the lawful authority of the State, or against the lives of the inhabitants thereof, or any part of them, he shall be punished by confinement in the penitentiary for not less than five nor longer than twenty years."

cannot be accurately foreseen." A state " cannot reasonably be required to defer the adoption of measures for its own peace and safety until the revolutionary utterances lead to actual disturbances of the public peace or imminent and immediate danger of its own destruction; but it may, in the exercise of its judgment, suppress the threatened danger in its incipiency."

To learn the meaning of these words in their application to the Georgia statute we must read them in their setting. Sanford, J., had pointed out that the statute then before him, the New York criminal anarchy act, forbade the teaching and propagation by spoken word or writing of a particular form of doctrine, carefully defined and after such definition denounced on reasonable grounds as fraught with peril to the state. There had been a determination by the state through its legislative body that such utterances " are so inimical to the general welfare and involve such danger of substantive evil that they may be penalized in the exercise of its police power." 268 U. S. at p. 668. In such circumstances " the question whether any specific utterance coming within the prohibited class is likely, in and of itself, to bring about the substantive evil, is not open to consideration. It is sufficient that the statute itself be constitutional and that the use of the language comes within its prohibition." 268 U. S. 670. In effect the words had been placed upon an expurgatory index. At the same time the distinction was sharply drawn between statutes condemning utterances identified by a description of their meaning and statutes condemning them by reference to the results that they are likely to induce. " It is clear that the question in such cases [i. e. where stated doctrines are denounced] is entirely different from that involved in those cases where the statute merely prohibits certain acts involving the danger of substantive evil, without any reference to

language itself, and it is sought to apply its provisions to language used by the defendant for the purpose of bringing about the prohibited results." pp. 670, 671. Cf. *Whitney* v. *California, supra; Fiske* v. *Kansas, supra.*

The effect of all this was to leave the question open whether in cases of the second class, in cases, that is to say, where the unlawful quality of words is to be determined not upon their face but in relation to their consequences, the opinion in *Schenck* v. *United States,* supplies the operative rule. The conduct charged to this appellant—in substance an attempt to enlarge the membership of the Communist party in the city of Atlanta—falls, it will be assumed, within the second of these groupings, but plainly is outside the first. There is no reason to believe that the Supreme Court of Georgia, when it quoted from the opinion in Gitlow's case, rejected the restraints which the author of that opinion had placed upon his words. For the decision of the case before it there was no need to go so far. Circulation of documents with intent to incite to revolution had been charged in an indictment. The state had the power to punish such an act as criminal, or so the court had held. How close the nexus would have to be between the attempt and its projected consequences was matter for the trial.

*Carr* v. *State, No. 2,* like the case under review, was a prosecution under Penal Code, § 56 (not § 58), and like *Carr* v. *State, No. 1,* came up on demurrer. All that the court held was that when attacked by demurrer the indictment would stand. This appears from the headnote, drafted by the court itself. After referring to this headnote, the court states that it may be " useful and salutary " to repeat what it had written in *Carr* v. *State, No. 1.* Thereupon it quotes copiously from its opinion in that case including the bulk of the same extracts from *Gitlow* v. *New York.* The extracts show upon their face that

they have in view a statute denouncing a particular doctrine and prohibiting attempts to teach it. They give no test of the bond of union between an idea and an event.

What has been said as to the significance of the opinions in the two cases against Carr has confirmation in what happened when appellant was brought to trial. The judge who presided at that trial had the first of those opinions before him when he charged the jury, or so we may assume. He did not read it as taking from the state the burden of establishing a clear and present danger that insurrection would ensue as a result of the defendant's conduct. This is obvious from the fact that in his charge he laid that very burden on the state with emphasis and clarity. True, he did not have before him the opinion in prosecution *No. 2,* for it had not yet been handed down, but if he had seen it, he could not have gathered from its quotation of the earlier case that it was announcing novel doctrine.

From all this it results that Herndon, this appellant, came into the highest court of Georgia without notice that the statute defining his offense was to be given a new meaning. There had been no rejection, certainly no unequivocal rejection, of the doctrine of *Schenck* v. *United States,* which had been made the law of the case by the judge presiding at his trial. For all that the record tells us, the prosecuting officer acquiesced in the charge, and did not ask the appellate court to apply a different test. In such a situation the appellant might plant himself as he did on the position that on the case given to the jury his guilt had not been proved. He was not under a duty to put before his judges the possibility of a definition less favorable to himself, and make an argument against it, when there had been no threat of any change, still less any forecast of its form or measure. He might wait until the law of the case had been rejected by the reviewing court before insisting that the effect would be an invasion

of his constitutional immunities. If invasion should occur, a motion for rehearing diligently pressed thereafter would be seasonable notice. This is the doctrine of *Missouri* v. *Gehner* and *Brinkerhoff-Faris Co.* v. *Hill.* It is the doctrine that must prevail if the great securities of the Constitution are not to be lost in a web of procedural entanglements.

New strength is given to considerations such as these when one passes to a closer view of just what the Georgia court did in its definition of the statute. We have heard that the meaning had been fixed by what had been held already in *Carr* v. *State,* and that thereby the imminence of the danger had been shown to be unrelated to innocence or guilt. But if that is the teaching of those cases, it was discarded by the very judgment now subjected to review. True, the Georgia court, by its first opinion in the case at hand, did prescribe a test that, if accepted, would bar the consideration of proximity in time. " It is immaterial whether the authority of the state was in danger of being subverted or that an insurrection actually occurred or was impending." " Force must have been contemplated, but . . . the statute does not include either its occurrence or its imminence as an ingredient of the particular offense charged." It would not be " necessary to guilt that the alleged offender should have intended that an insurrection should follow instantly, or at any given time, but it would be sufficient that he intended it to happen at any time, as a result of his influence, by those whom he sought to incite." On the motion for a rehearing the Georgia court repelled with a little heat the argument of counsel that these words were to be taken literally, without " the usual reasonable implications." " The phrase ' at any time,' as criticized in the motion for rehearing, was not intended to mean at any time in the indefinite future, or at any possible later time, however remote." " On the contrary the phrase ' at any time ' was necessarily intended, and should

have been understood, to mean within a reasonable time; that is, within such time as one's persuasion or other adopted means might reasonably be expected to be directly operative in causing an insurrection." "Under the statute as thus interpreted, we say, as before, that the evidence was sufficient to authorize the conviction."

Here is an unequivocal rejection of the test of clear and present danger, yet a denial also of responsibility without boundaries in time. True, in this rejection, the court disclaimed a willingness to pass upon the question as one of constitutional law, assigning as a reason that no appeal to the Constitution had been made upon the trial or then considered by the judge. *Brown* v. *State*, 114 Ga. 60; 39 S.E. 873; *Loftin* v. *Southern Security Co.*, 162 Ga. 730; 134 S. E. 760; *Dunaway* v. *Gore*, 164 Ga. 219, 230; 138 S. E. 213. Such a rule of state practice may have the effect of attaching a corresponding limitation to the jurisdiction of this court where fault can fairly be imputed to an appellant for the omission to present the question sooner. *Erie R. Co.* v. *Purdy*, 185 U. S. 148; *Louisville & Nashville R. Co.* v. *Woodford*, 234 U. S. 46, 51. No such consequence can follow where the ruling of the trial judge has put the Constitution out of the case and made an appeal to its provisions impertinent and futile. Cf. *Missouri* v. *Gehner, supra; Rogers* v. *Alabama*, 192 U. S. 226, 230. In such circumstances, the power does not reside in a state by any rule of local practice to restrict the jurisdiction of this court in the determination of a constitutional question brought into the case thereafter. *Davis* v. *Wechsler*, 263 U. S. 22, 24. If the rejection of the test of clear and present danger was a denial of fundamental liberties, the path is clear for us to say so.

What was brought into the case upon the motion for rehearing was a standard wholly novel, the expectancy of life to be ascribed to the persuasive power of an idea. The defendant had no opportunity in the state court to

prepare his argument accordingly. He had no opportunity to argue from the record that guilt was not a reasonable inference, or one permitted by the Constitution, on the basis of that test any more than on the basis of others discarded as unfitting. Cf. *Fiske* v. *Kansas, supra.* The argument thus shut out is submitted to us now. Will men "judging in calmness" (Brandeis, J., in *Schaefer* v. *United States, supra,* at p. 483) say of the defendant's conduct as shown forth in the pages of this record that it was an attempt to stir up revolution through the power of his persuasion and within the time when that persuasion might be expected to endure? If men so judging will say yes, will the Constitution of the United States uphold a reading of the statute that will lead to that response? Those are the questions that the defendant lays before us after conviction of a crime punishable by death in the discretion of the jury. I think he should receive an answer.

Mr. Justice Brandeis and Mr. Justice Stone join in this opinion.