**FOUQUETTE v. BERNARD.**

No. 13274.

United States Court of Appeals Ninth Circuit.

Feb. 29, 1952.

John W. Bonner, Las Vegas, Nev., for appellant.

W. T. Mathews, Atty. Gen. of Nevada (Geo. P. Annand, Deputy Atty. Gen., William N. Dunseath, Deputy Atty. Gen., John W. Barrett, Deputy Atty. Gen., Roger D. Foley, Dist. Atty., Las Vegas, Clark County, Nev., of counsel), for appellee.

DENMAN, Chief Judge.

Fouquette, sentenced to be executed next Monday, March 3, 1952, by the Eighth District Court of the State of Nevada sitting in Clark County, seeks my order staying his execution for the murder of one Donald Brown pending his appeal in this court from the order of the United States District Court of Nevada denying him relief on his application for a writ of habeas corpus to the warden of the penitentiary where he is confined.

■ Although the district court denied Fouquette's motion for a stay of his execution, it gave its certificate of probable cause for the appeal which was immediately taken and permitted him to appeal forma pauperis. Obviously, if there is probable cause for the appeal it would be a mockery of federal justice to execute Fouquette pending its consideration.

The basic contention here is that Fouquette who twice confessed to the murder of Brown and another person in the State of California, while he was released as an out patient of an asylum for the insane in the State of California, had his defense of insanity tried in a county where the passion and prejudice against him was so generally aroused that a dispassionate jury could not be impaneled.

The dangerous character of Fouquette's insanity was determined by the superior court of San Bernardino County, California, on January 5, 1948. After an insanity trial the court found: "That Clayton O. Fouquett is so mentally ill as to require supervision and treatment by physicians and hospital care, and that unless such supervision, care and restraint are provided the said person may endanger health, person and

property, and that it is dangerous for life, health, person and property for the said person to be without such supervision, treatment, care and restraint, and that the person is so dangerously mentally ill as to require commitment to the Department of Mental Hygiene for placement in a designated State Hospital for the care and treatment of the insane. It is therefore ordered, adjudged and decreed that Clayton O. Fouquett is dangerously mentally ill, is an insane person, and that Clayton O. Fouquett be committed to the Department of Mental Hygiene for placement in a designated State Hospital at Patton, California."

■ Fouquette has satisfied the requirement of 28 U.S.C. § 2254 in the exhaustion of his state remedies. He had appealed from his conviction to the Supreme Court of Nevada and the judgment was affirmed.[1] He sought certiorari from the United States Supreme Court and it was denied.[2] He petitioned the Supreme Court of Nevada for a writ of habeas corpus on the ground here relied upon, which was denied him.[3] He sought certiorari from the United States Supreme Court, which was denied.[4]

The United States District Court for Nevada permitted Fouquette to file his application for the writ, forma pauperis. Without protest from the Attorney General of the state, who appeared to oppose the application, the district court proceeded to try the case on its merits. The allegations of the application were not denied. Evidence was introduced on behalf of the applicant which was not disputed by the Nevada Attorney General nor any contradictory evidence introduced.

The uncontradicted evidence consisted of an affidavit of John W. Bonner relative to the local prejudice, exhibits of statements in newspapers circulated in Clark County from the time of Fouquette's apprehension to his trial, the above judgment of a California superior court committing Fouquette for his insanity, records of his treatment in the asylum to which he

1. State v. Fouquette, Nev., 221 P.2d 404.

2. Fouquette v. Nevada, 341 U.S. 932, 71 S.Ct. 799, 95 L.Ed. 1361.

3. Ex parte Fouquette, Nev., 233 P.2d 859.

4. Fouquette v. Nevada, 342 U.S. 928, 72 S.Ct. 369.

was committed, and his release as an out patient still under the control of the hospital at the time the murder was committed.

■ It is upon the record of these undenied allegations of the application for habeas corpus and this uncontradicted evidence that the court's certificate of probable cause must be deemed to be based. It is my opinion that the record presents as a substantial question for consideration by this court on the pending appeal, the basic contention stated above as bringing the case within the rationale of such decisions as Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Downes v. Dunaway, 5 Cir., 52 F.2d 586.

The undenied allegations of the application are:

"That petitioner was denied a fair trial because of prejudicial influence outside the courtroom prior to and during his trial in Clark County, Nevada; the newspapers in said county stirred and excited the population of Clark County to such an extent that it was impossible to obtain a jury not influenced thereby; numerous details connected with petitioner's life were exploited to the limit by the press; numerous statements were given to the press by officials engaged in the prosecution of petitioner which were freely quoted by the press and given wide publicity; many of such statements contained false, untrue and misleading statements; many of such statements and articles contained matter not admissible as evidence against petitioner; * * * that petitioner was a stranger and unknown in said Clark County and the deceased was a very popular resident of said county; that extreme prejudice existed against petitioner prior to and during his trial throughout said county to such an extent that it was impossible to obtain a fair trial in said county or to obtain a jury which would not be influenced, intimidated, overawed and subjected to severe criticism should a verdict of anything less than that rendered be brought in against petitioner; that in forcing petitioner to trial in Clark County with such prejudice existing over his objections and notwithstanding his motion for change of venue in such an atmosphere, deprived him of his life and liberty without due process of law, contrary to Nevada Statutes, Article I, Section 8 of Nevada Constitution and Section I, Fourteenth Amendment to the United States Constitution.

"That the evidence appearing in the record in said Case No. 3564 of this Court disclosed that petitioner established by a preponderance thereof that on the date of the alleged crime he was insane and still on parole from Patton State Hospital, Patton, California, a State Insane Asylum, having been discharged therefrom on April 28, 1948, the alleged crime having occurred August 19, 1948; although the defense of insanity was established and proved; because the case had already been prejudiced by the local press and because the local prejudice then existing against appellant, after only 15 minutes of deliberation, he was found guilty as aforesaid, all of which deprived him of a fair trial and denied him his life and liberty without due process of law, contrary to Nevada Statutes, Article I. Section 8, Nevada Constitution and Section I, Fourteenth Amendment to United States Constitution."

In addition the district court had before it the uncontradicted affidavit of Bonner which stated

"* * * that I have discussed the said case with numerous persons in Clark County, Nevada since my appointment and I have been unable, so far to find anyone with the exception of one person who does not have a bitter feeling of prejudice toward Mr. Fouquette. Said discussions were had with persons from every part of Clark County.

"It is my opinion that such a feeling of prejudice exists throughout Clark County, Nevada; that because of such feeling in the minds of the citizenry of Clark County, Nevada that it is im-

possible to get a fair and impartial jury in Clark County which would give Mr. Fouquette a fair trial.

"I am of the further opinion that even if it were possible to obtain a fair and impartial jury in Clark County that such a jury would be overawed and intimidated to such an extent that it would not be possible for them to render a fair and impartial verdict without severe criticism from their fellow citizens in the County.

"That ever since the 25th day of August, 1948, and at various times since said date the Las Vegas Evening Review Journal and the Boulder City News, newspapers of general circulation throughout Clark County, Nevada have printed newspaper articles about the said case which said newspaper articles having been generally read by persons throughout Clark County, Nevada has added to the bitterness and prejudice already existing through the County; that copies of said articles are attached hereto and made a part of this affidavit and marked Exhibit A."

Among the newspaper clippings in evidence before the court are those showing that the district attorney, after Fouquette's apprehension but before the charge, sought to convince the public that Fouquette was sane when he committed the murder in Clark County. Among such prejudicial statements by the district attorney, so forestalling Fouquette's defense of insanity, in newspapers circulated in Clark County are the following: "That he [the district attorney] believed Fouquette to be absolutely sane before, during and after the murders" and a day later: "This is a deliberate wanton killing performed by a normal man."

It further appears that when Fouquette committed the two murders he was still an out patient of the California Asylum, being released on April 28, 1948, after shock therapeutic treatment to the custody of his wife.

The district attorney further in the newspaper interview gave a description of how he framed a second confession he obtained from Fouquette to rebut his defense of insanity as follows:

"Jones, in framing the second written confession, was extremely careful to combat in advance any attempts which might be made at a trial to introduce psychiatric testimony that Fouquette was insane.

"One paragraph of the confession, signed by the killer, was:

"'On August 19, 1948 (the night Brown was brutally slain) at the time I committed the above mentioned robbery, kidnap[p]ing and shooting, I was in my right mind. I knew what I was doing and was not suffering from any influence of any drugs, narcotics, lack of memory, amnesia or any other mental or physical disability, except that I had been drinking liquor to some extent over a period of several days. I was to some extent under the influence of liquor but, other than that, I had full possession of my faculties. I knew what I was doing and can remember most of the details.' "

The district attorney then gave to the newspaper the full text of the confession so "framed" which was published, filling a column of fine print.

The district attorney's press interview continues the framing of the public mind against Fouquette with a description of the danger to the community if Fouquette should establish his defense of insanity, stating:

"On behalf of law-abiding American citizenry, I am extremely anxious that Fouquette not be found mentally incompetent, so that he may again be paroled, run amok, and claim the lives of other innocent men and wreck the lives of their families."

Following this the Nevada district judge, who subsequently tried Fouquette, gave an interview in the same newspaper circulated in his county, showing how under the Nevada law the "citizenry" of the district attorney's above statement well could be exposed to future danger if Fouquette were

acquitted on the ground of insanity. The judge's newspaper statement is as follows:

> "Asked about the possibility of finding Fouquette insane, his confinement, and the subsequent plea that he had regained sanity, Judge McNamee explained:

> " 'If the man was found guilty of the crime when insane and confined, and subsequently regained his sanity, this would have to be proved. If found to have recovered sanity, but to have been insane at the time of the crime, he would go free, as an insane person cannot commit a public offense.' "

The judge then cites a Nevada case in which one acquitted on the ground of insanity had within a month been released from confinement in the state hospital as having recovered his sanity.

The kind of prosecuting attorneys who seek to inflame the public mind against an accused man and thus by a newspaper pretrial aid their conviction records or their reelection, sometimes offer the excuse that by publishing certain details of the crime witnesses will voluntarily come forward with other needed evidence. Here no such situation existed. Here were two confessions and the major contention was the sanity or the insanity of Fouquette when the crime was committed. He was not a resident of Clark County, where the newspapers were circulated, but of California.

Fouquette's attorney offered at his trial the above evidence to show a pretrial of the insanity defense in the press of the county from which the jurors were to be impaneled, as supporting a motion for change of venue. The trial judge denied the motion, with the privilege of renewing it after the jury was selected. It was not so renewed and the Nevada supreme court held that Fouquette had lost his right to have his motion for change of venue considered on its merits.[5]

The district court below thought this Nevada decision binding on it in this habeas corpus proceeding. It is arguable that on certiorari from the Nevada supreme court's holding, the Supreme Court of the United States would refuse to consider the constitutional contention involved. Herndon v. Georgia, 295 U.S. 441, 55 S.Ct. 794, 79 L. Ed. 1530; cf. Bryant, People of State of New York ex rel., v. Zimmerman, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184. However, these cases were attacks on the validity of state statutes rather than state judgments of conviction of crime.

I am unable to find any Supreme Court case holding that such a decision of a state supreme court deprives an applicant of his right to a writ of habeas corpus based upon such facts as those above considered, and agree with the district court that such a deprivation presents the substantial question warranting its certificate of probable cause. It further warrants the stay of execution I have ordered.

5.  State v. Fouquette, Nev., 221 P.2d 404.