No. 77–1679. Estate of Wilson et al. *v.* Aiken Industries, Inc. Sup. Ct. Pa. Certiorari denied.

Mr. Justice Blackmun, concurring.

Mr. Justice Black prefaced his dissent in *Boddie* v. *Connecticut,* 401 U. S. 371, 389 (1971), with the observation: "This is a strange case and a strange holding." I would apply the Justice's observation to what legal theorizing has effectuated here.

Thomas A. Wilson was the sole shareholder of National Carbide Die Company. In 1967, respondent, Aiken Industries, Inc., purchased Carbide's assets in exchange for Aiken stock. It was agreed that Mr. Wilson would be employed by Aiken and that, while so employed, he would refrain from competition.

Subsequently, Aiken instituted an equity action in a Pennsylvania state court against Wilson. An injunction and damages were sought. While the suit was pending, Wilson died, and the executors of his will were substituted as defendants. The claim for injunctive relief was then withdrawn. The chancellor found that the decedent had violated both his con-

tractual and his fiduciary duties, and awarded damages of $196,576.75 [1] to Aiken. A court en banc affirmed.

The executors appealed to the Supreme Court of Pennsylvania. That tribunal affirmed the judgment by an equally divided vote. Such a result, of course, is no stranger to appellate procedure and in itself raises no constitutional issue. See, e. g., Carter v. Miller, 434 U. S. 356 (1978); Williams & Wilkins Co. v. United States, 420 U. S. 376 (1975).

What is strange, however, and what surely will be inexplicable to many laymen if not to some lawyers, is that all participating justices of the Supreme Court of Pennsylvania, six in number, concluded that the judgment, in its determination of damages, was erroneous. Three voted to affirm on the issue of liability, "but would vacate the award insofar as it fixes the amount of damages and would remand for the recalculation of damages." 477 Pa. 34, 37, 383 A. 2d 808, 809 (1978). The other three "would reverse the decree below on the ground the non-competition agreement was not breached." Id., at 38, 383 A. 2d, at 809. One opinion was filed for the first group of justices. Ibid. Each of the three who would reverse filed a separate opinion. Id., at 46, 48, 383 A. 2d, at 814, 815.

The trial court's judgment, although all six reviewing justices agreed that it was erroneous, nonetheless was affirmed.[2] The executors, as petitioners here, understandably complain, and with some vigor, about what they feel is "a patent miscarriage of justice." Pet. for Cert. 4. They concede that no federal question was raised during the state-court proceedings, but they assert that this was because "the denial of due process occurred in the order of the state appellate court." Ibid.

---

[1] The parties in their submissions here employ the figure of $193,576.75. Pet. for Cert. 4; Brief in Opposition 1. For present purposes the $3,000 difference is of no significance.

[2] "The Court being equally divided with respect to the question of appellant's liability, the decree below is affirmed." 477 Pa., at 37, 383 A. 2d, at 809.

I suppose that this Court necessarily is correct in denying the petition for certiorari. It is well established that certiorari will not be granted where a federal constitutional issue is raised here for the first time on review of a state-court decision. *Moore* v. *Illinois,* 408 U. S. 786, 799 (1972); *Cardinale* v. *Louisiana,* 394 U. S. 437, 438–439 (1969). There appears to be an exception to that rule, however, whenever the federal issue arose from an unanticipated ruling of the state court, the petition for rehearing presented the first opportunity to raise it, and that opportunity was seized. *Herndon* v. *Georgia,* 295 U. S. 441, 443–444 (1935); *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358, 366–367 (1932).

Petitioners in fact applied to the Supreme Court of Pennsylvania for reargument. Their application, reproduced in the App. to Brief in Opposition 1a, refers, to be sure, to "a patent miscarriage of justice." *Id.,* at 2a. But the stress is on "a substantial conflict of opinion among the Justices on the scope of appellate review of an equity adjudication," and on "the law of restrictive covenants in Pennsylvania." *Ibid.* In all this, any deprival of federal due process is not suggested in so many words. In any event, the Pennsylvania court denied reargument without explanatory comment. I fear that, as a consequence, petitioners fall short of placing themselves within the protective exception recognized in the *Herndon* and *Sunburst* cases. See *Beck* v. *Washington,* 369 U. S. 541, 553–554 (1962).

I therefore join the Court in its denial of the petition for certiorari. I must confess, however, that when a State's highest court unanimously *agrees* that a judgment is wrong but nevertheless affirms that judgment by an equally divided vote, I am left with substantial discomfort. That, I suspect, is not something this Court can resolve or cure on the record before us. I observe only that there ought to be some way on the state side—such as rehearing and definitive decision by a full complement of justices—for this obviously, and conced-

edly, unjust result to be corrected. Otherwise, I fear that there will be new recruits to be added to those members of the public who already are inclined to agree with Mr. Bumble's well-known remark.[3]

---

[3] " 'If the law supposes that,' said Mr. Bumble, . . . 'the law is a ass—a idiot.' " C. Dickens, Oliver Twist 377 (1912).