## FISKE *v.* KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 48. Argued May 3, 1926.—Decided May 16, 1927.

1. A decision of a state court applying and enforcing a state statute of general scope against a particular transaction as to which there was a distinct and timely insistence that, if so applied, the statute was void under the Federal Constitution, necessarily affirms .the validity of the statute as so applied, and the judgment is, therefore, reviewable by writ of error under § 237 of the Judicial Code. P. 385.
2. The inquiry then is whether the statute is constitutional as applied and enforced in respect of the situation presented. P. 385.
3. This Court will review the finding of facts by a state court where a federal right has been denied as the result of a finding shown by the record to be without evidence to support it; or where a conclusion of law as to a federal right, and a finding of fact, are so intermingled as to make it necessary, in order to pass upon the federal question, to analyze the facts. P. 385.
4. A Kansas statute defining " criminal syndicalism " as " the doctrine which advocates crime, physical violence, arson, destruction of property, sabotage, or other unlawful acts or methods, as a means of accomplishing or effecting industrial or political ends, or as a

means of effecting industrial or political revolution, or for profit . . ." and punishing any person who " advocates, affirmatively suggests or teaches the duty, necessity, propriety or expediency of crime, criminal syndicalism, or sabotage," was applied by the state court as covering a case where it was charged and proved merely that the defendant secured members in an organization whose constitution proclaimed: " That the working class and the employing class have nothing in common, and that there can be no peace so long as hunger and want are found among millions of working people and the few who make up the employing class have all the good things of life. Between these two classes a struggle must go on until the workers of the world organize as a class, take possession of the earth and the machinery of production and abolish the wage system. Instead of the conservative motto, 'A fair day's wages for a fair day's work,' we must inscribe on our banner the revolutionary watchword, 'Abolition of the wage system.' By organizing industrially we are forming the structure of the new society within the shell of the old." *Held,* that there being no charge or evidence that the organization advocated any crime, violence, or other unlawful acts or methods as a means of effecting industrial or political changes or revolution, thus applied the statute is a violation of the Due Process Clause of the Fourteenth Amendment. P. 386. 117 Kan. 69, reversed.

ERROR to a judgment of the Supreme Court of Kansas which affirmed a conviction of Fiske under the Kansas Criminal Syndicalism Act.

*Mr. A. M. Harvey,* with whom *Messrs. Randal C. Harvey* and *Charles L. Carroll* were on the brief, for plaintiff in error.

*Mr. Charles B. Griffith,* Attorney General of Kansas, with whom *Mr. Roland Boynton,* Assistant Attorney General, were on the brief, for defendant in error.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The plaintiff in error was tried and convicted in the District Court of Rice County, Kansas, upon an information charging him with violating the Criminal Syndicalism Act of that State. Laws, Spec. Sess. 1920, c. 37. The judgment was affirmed by the Supreme Court of the

State, 117 Kan. 69; and this writ of error was allowed by the Chief Justice of that court.

The only substantial federal question presented to and decided by the state court, and which may therefore be re-examined by this Court, is whether the Syndicalism Act as applied in this case is repugnant to the due process clause of the Fourteenth Amendment.

The relevant provisions of the Act are:

" Section 1. ' Criminal Syndicalism ' is hereby defined to be the doctrine which advocates crime, physical violence, arson, destruction of property, sabotage, or other unlawful acts or methods, as a means of accomplishing or effecting industrial or political ends, or as a means of effecting industrial or political revolution, or for profit. . . . Sec. 3. Any person who, by word of mouth, or writing, advocates, affirmatively suggests or teaches the duty, necessity, propriety or expediency of crime, criminal syndicalism, or sabotage . . . is guilty of a felony. . . ."

The information charged that the defendant did " by word of mouth and by publicly displaying and circulating certain books and pamphlets and written and printed matter, advocate, affirmatively suggest and teach the duty, necessity, propriety and expediency of crime, criminal syndicalism, and sabotage by . . . knowingly and feloniously persuading, inducing and securing " certain persons " to sign an application for membership in . . . and by issuing to " them " membership cards " in a certain Workers' Industrial Union, " a branch of and component part of the Industrial Workers of the World organization, said defendant then and there knowing that said organization unlawfully teaches, advocates and affirmatively suggests: ' That the working class and the employing class have nothing in common, and that there can be no peace so long as hunger and want are found among millions of working people and the few who make up the employing class have all the good things

of life.' And that, ' Between these two classes a struggle must go on until the workers of the World organize as a class, take possession of the earth, and the machinery of production and abolish the wage system.' And that: ' Instead of the conservative motto, "A fair day's wages for a fair day's work," we must inscribe on our banner the revolutionary watchword, "Abolition of the wage system." By organizing industrially we are forming the structure of the new society within the shell of the old.' "

The defendant moved to quash the information as insufficient, for the reason, among others, that it failed to specify the character of the organization in which he was alleged to have secured members. This was overruled.

On the trial the State offered no evidence as to the doctrines advocated, suggested or taught by the Industrial Workers of the World organization other than a copy of the preamble to the constitution of that organization containing the language set forth and quoted in the information. The defendant, who testified in his own behalf, stated that he was a member of that organization and understood what it taught; that while it taught the matters set forth in this preamble it did not teach or suggest that it would obtain industrial control in any criminal way or unlawful manner, but in a peaceful manner; that he did not believe in criminal syndicalism or sabotage, and had not at any time advocated, suggested or taught the duty, necessity, propriety and expediency of crime, criminal syndicalism or sabotage, and did not know that they were advocated, taught or suggested by the organization; and that in taking the applications for membership in the organization, which contained the preamble to the constitution, he had explained the principles of the organization so far as he knew them by letting the applicants read this preamble.

The jury was instructed that before the defendant could be convicted they must be satisfied from the evidence, beyond a reasonable doubt, that the Industrial Workers

of the World was an organization that taught criminal syndicalism as defined by the Syndicalism Act.

The defendant moved in arrest of judgment upon the ground, among others, that the evidence and the facts stated did not constitute a public offense and substantiate the charges alleged in the information. And he also moved for a new trial upon the grounds, among others, that the verdict was contrary to the law and the evidence and wholly unsupported by the evidence. Both of these motions were overruled.

On the appeal to the Supreme Court of the State, among the errors assigned were, generally, that the court erred in overruling his motions to quash the information, his demurrer to the evidence—which does not appear in the record—, and his motions in arrest of judgment and for a new trial; and specifically, that the "court erred in refusing to quash the information, in overruling the demurrer to the evidence, and in overruling the motion in arrest of judgment, because the information and the cause of action attempted to be proved were based upon" the Kansas Syndicalism Act, "which, insofar as it sustains this prosecution is in violation . . . of the Constitution of the United States and especially of the Fourteenth Amendment" including the due process clause thereof.

The Supreme Court of the State, in its opinion, said: The information "does not in set phrase allege that the association known as the Industrial Workers of the World advocates, affirmatively suggests or teaches criminal syndicalism, but when read as a whole it clearly signifies this, and also that the language quoted (which the evidence shows to be taken from the preamble of the constitution of that organization) was employed to express that doctrine. . . . The language quoted from the I. W. W. preamble need not—in order to sustain the judgment—be held, necessarily and as a matter of law, to advocate,

teach or even affirmatively suggest physical violence as a means of accomplishing industrial or political ends. It is open to that interpretation and is capable of use to convey that meaning. . . . The jury were not required to accept the defendant's testimony as a candid and accurate statement. There was room for them to find, as their verdict shows they did, that the equivocal language of the preamble and of the defendant in explaining it to his prospects was employed to convey and did convey the sinister meaning attributed to it by the state.

" 7. A final contention is that the statute . . . is obnoxious to the due-process-of-law clause of the fourteenth amendment to the federal constitution. Statutes penalizing the advocacy of violence in bringing about governmental changes do not violate constitutional guarantees of freedom of speech."

A decision of a state court applying and enforcing a state statute of general scope against a particular transaction as to which there was a distinct and timely insistence that, if so applied, the statute was void under the Federal Constitution, necessarily affirms the validity of the statute as so applied, and the judgment is, therefore, reviewable by writ of error under § 237 of the Judicial Code. *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 288. The inquiry then is whether the statute is constitutional as applied and enforced in respect of the situation presented. *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 510; *Cudahy Co.* v. *Parramore,* 263 U. S. 418, 422. And see *St. Louis, &c., Railway* v. *Wayne,* 224 U. S. 354, 359.

And this Court will review the finding of facts by a State court where a federal right has been denied as the result of a finding shown by the record to be without evidence to support it; or where a conclusion of law as to a Federal right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the Federal

55514°—28——25

question, to analyze the facts. *Northern Pacific Railway v. North Dakota,* 236 U. S. 585, 593; *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, 394; and cases cited.

Here the state court held the Syndicalism Act not to be repugnant to the due process clause as applied in a case in which the information in effect charged the defendant with violation of the Act in that he had secured members in an organization which taught, advocated and affirmatively suggested the doctrines set forth in the extracts from the preamble to its constitution, and in which there was no evidence that the organization, taught, advocated or suggested any other doctrines. No substantial inference can, in our judgment, be drawn from the language of this preamble, that the organization taught, advocated or suggested the duty, necessity, propriety, or expediency of crime, criminal syndicalism, sabotage, or other unlawful acts or methods. There is no suggestion in the preamble that the industrial organization of workers as a class for the purpose of getting possession of the machinery of production and abolishing the wage system, was to be accomplished by any other than lawful methods; nothing advocating the overthrow of the existing industrial or political conditions by force, violence or unlawful means. And standing alone, as it did in this case, there was nothing which warranted the court or jury in ascribing to this language, either as an inference of law or fact, " the sinister meaning attributed to it by the state." In this respect the language of the preamble is essentially different from that of the manifesto involved in *Gitlow v. New York,* 268 U. S. 652, 665, and lacks the essential elements which brought that document under the condemnation of the law. And it is not as if the preamble were shown to have been followed by further statements or declarations indicating that it was intended to mean, and to be understood as advocating, that the ends outlined therein would be accomplished or brought about

by violence or other related unlawful acts or methods. Compare *Whitney* v. *California* and *Burns* v. *United States, ante,* pp. 357, 328.

The result is that the Syndicalism Act has been applied in this case to sustain the conviction of the defendant, without any charge or evidence that the organization in which he secured members advocated any crime, violence or other unlawful acts or methods as a means of effecting industrial or political changes or revolution. Thus applied the Act is an arbitrary and unreasonable exercise of the police power of the State, unwarrantably infringing the liberty of the defendant in violation of the due process clause of the Fourteenth Amendment. The judgment is accordingly reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*