**SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, CLC; et al., Plaintiffs,**

**California Democratic Party, an unincorporated association, Plaintiff in Intervention,**

v.

**FAIR POLITICAL PRACTICES COMMISSION, et al., Defendants,**

**Quentin L. Kopp and Ross Johnson, Defendants in Intervention.**

**No. CIV. S–89–433 LKK.**

United States District Court, E.D. California.

Sept. 14, 1989.

---

Joseph Remcho, Kathleen J. Purcell, Lowell Finley, Julie M. Randolph, Steven D. Dopkin, Remcho, Johansen & Purcell, San Francisco, Cal., for plaintiffs.

Robert E. Darby, Calvin House, Fulbright, Jaworski, Reavis & McGrath, Los Angeles, Cal., for plaintiff in intervention.

Kathryn E. Donovan, Scott Hallabrin, Fair Political Practices Com'n, Sacramento, Cal., for defendants.

Quentin L. Kopp, Kopp & DiFranco, San Francisco, Cal., for defendants in intervention.

## ORDER

KARLTON, Chief Judge.

In this action, plaintiffs brought suit against the California Fair Political Practic-

es Commission ("FPPC")[1] challenging as unconstitutional a statute adopted pursuant to California's initiative process, Proposition 73, codified as Title 9, Chapter 5 of the California Government Code.[2] Proposition 73 seeks to control campaign financing in various ways. The motion at bar seeks summary judgment only with regard to California Government Code section 85306,[3] which concerns the use of campaign funds raised prior to January 1989.[4]

Plaintiffs filed their complaint for declaratory and injunctive relief on March 24, 1989. A motion for preliminary injunction was granted on May 15, 1989. That order enjoined the FPPC from applying section 85306 to pre–1989 funds raised within Proposition 73's overall contribution limits[5]. At a subsequent status conference at which a hearing on the instant motion was set, the parties stipulated that in the event this motion is granted, pre–1989 funds could be disbursed and accepted without regard to fiscal year deadlines.

## I

### SUMMARY JUDGMENT STANDARDS UNDER FED.R.CIV.P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under summary judgment practice, the moving party

[A]lways bears the initial responsibility of informing the district court of the

1. Under state law, the FPPC is the agency charged with the responsibility of enforcing civil statutes pertaining to the financing of elections. Cal.Gov.Code § 83111.

2. Subsequently, I granted the motions of State Senator Kopp and Assemblyman Johnson, self-described principal authors of Proposition 73, to intervene as parties defendant, and the California Democratic Party to intervene as a plaintiff.

3. The statute provides: "Any person who possesses campaign funds on the effective date of this chapter may expend those funds for any lawful purpose other than to support or oppose a candidacy for elective office."

4. Defendants in intervention have filed a motion to strike certain evidence. The motion is denied since it was not filed in conformance with the briefing schedule established for the motion at bar. *See* Local Rule 110. In any event, extended consideration of the motion is unnecessary since none of the evidence defendant-intervenors seek to strike is crucial to the court's analysis.

5. As a general matter, Proposition 73 limits fiscal year contributions to candidates as follows: $1,000 per individual (§ 85301(a)); $2,500 per political committee (§ 85303(a)); and $5,000 per political party, or broad-based political committee (§ 85303(b)).

basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

If the moving party identifies an absence of material fact in the record, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). In attempting to establish the existence of this factual dispute, the opposing party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. at 1355 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence could support a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir.1987).

In resolving the summary judgment motion, the court examines the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–2514, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.*, 369

U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)); *Abramson v. University of Hawaii*, 594 F.2d 202, 208 (9th Cir.1979).

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## II

### FACTS

Plaintiffs, relying upon the FPPC's records, note that incumbent state legislators and constitutional officers had $12,-403,312 in campaign funds on hand as of December 31, 1988. Defendant-intervenors, while supplying no contradictory evidence, assert that:

> Defendant–Intervenors believe that the amount of campaign funds affected by section 85306 is a genuine issue of material fact. Reference Declarations of Ross Johnson and Quentin L. Kopp and Supplemental Declaration of Ross Johnson declaring that Section 85306 does not restrict his First Amendment rights of free speech.

Amended Response by Defendant–Intervenors to Plaintiff's Statement of Undisputed Facts, filed July 28, 1989, at 2.

■ These referenced declarations do not contradict the facts asserted by plaintiffs, nor is there a challenge to the reliability of the relevant records. Rather, in their Amended Response, defendant-intervenors dispute that funds are not available "for campaign purposes" (at best a legal issue, at worst a semantic dispute); the effect of section 85306 on individual plain-

tiffs (e.g., "the precise affects [sic] of section 85306 on the financing of the Friends of David Roberti is a genuine issue of material fact"), and like matters which do not appear to this court to constitute *material* issues of fact. *See* Section I (material issue of fact is one which affects the disposition of the motion).

Thus the Declaration of Ross Johnson, to which the objection refers, avers:

> I have been able to meet with my constituency and conduct the duties of my leadership position without any inhibition whatsoever on my ability to communicate my political views and agenda.
>
> The statutory structure which is alleged to "impermissibly restrict[ ]" Plaintiffs' (and the rest of us privileged enough to represent our constituients [sic]) constitutional freedoms does not do so. In drafting Proposition 73, it was my goal to ensure California's elected officials would not sacrifice their guarantees under the First and Fourteenth Amendments. I believe I met that goal, and on June 7, 1988 the People of California agreed.

Johnson Declaration at 5. This declaration simply does not create any issue of material fact. Assemblyman Johnson's subjective judgment concerning the effect of section 85306 on his ability to communicate with his constituents, and his intentions concerning the effect of Proposition 73, do not raise disputes as to its objective effect on the ability of either himself or others to expend the carryover funds on behalf of their own political campaigns. As I shall explain below, the central relevant fact at bar is that by virtue of the provisions of section 85306, a large sum of money raised prior to the effective date of the statute may not be expended on behalf of a candidate's pursuit of state elective office. This fact is not in genuine dispute.

## III

## POLITICAL CAMPAIGNS AND THE FIRST AMENDMENT

■ By its plain terms, section 85306 permits the use of campaign funds raised prior to the effective date of the statute for any lawful purpose except that for which it was given; namely, the direct advancement of the donee's political career. *See* footnote 3. Plaintiffs contend that the statute, in precluding expenditure of carryover funds to support or oppose a candidacy for state elective office, violates the free speech provisions of the First Amendment of the United States Constitution which, of course, were made applicable to the states through the Fourteenth Amendment. *See, e.g., Fiske v. Kansas*, 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927).

To sustain their attack, plaintiffs must first demonstrate that the provisions in issue impinge upon rights protected by the First Amendment. This task is easily accomplished. In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court taught that the expenditure of funds in connection with a political campaign is a matter of particular First Amendment concern. Critical to the issue at bar was the Court's determination that, in essence, every dollar spent in a campaign has value as protected speech and, accordingly, every restriction on expenditures implicates First Amendment rights. The Court explained:

> A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. This is because virtually every means of communication ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs. Speeches and rallies generally necessitate hiring a hall and publicizing the event. The electorate's increasing dependence on television, radio, and other mass media for news and information has made these expensive modes of communication indispensable instruments of effective political speech.

424 U.S. at 19, 96 S.Ct. at 634–635. *See also California Medical Ass'n v. Federal Election Commission*, 641 F.2d 619, 627

(9th Cir.1980), *aff'd* 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981) ("the ideal of the First Amendment, certainly in respect to political expression, is to permit the maximum 'quality of political speech,' as determined by the speaker"). Defendants seem to argue that given the broad discretion to expend carryover funds provided by the statute, it should not be regarded as an expenditure limitation at all and, accordingly, should not be perceived as implicating First Amendment rights. The argument must be rejected.

All parties apparently agree that the definition of "lawful purposes" for which pre–1989 funds could be expended is extremely broad. Such funds can be expended, among other things, to support or oppose ballot measures or candidates for federal office, to pay pre–1989 campaign expenses, to disseminate political views as long as unconnected with a campaign for state elective office or, for that matter, to contribute to charity.[6] Upon careful consideration, however, the broad scope of available targets for expenditure is irrelevant to the threshold First Amendment issue.

Defendants' argument amounts to no more than an attempt to deny that restrictions on political expenditures are restrictions on political speech. This attempted reliance on semantic legerdemain will not lie. It is, of course, true that many lawful expenditures might indirectly aid a candidate's campaign; that is simply beside the point. The statute constitutes a direct restraint on the content of the candidate's speech. It permits speech on behalf of a measure to undo Proposition 73, but not in support of the candidate's election. The argument that there is no restriction on speech because the candidate can support his campaign with other funds also misses the mark. It is the essence of *Buckley* that each dollar has First Amendment value. That the expenditure limitation directly implicates the core values of the First Amendment seems beyond dispute. *California Medical Ass'n v. FEC, supra.*

■ Having concluded that the right of candidates to expend carryover funds in campaigns for elective office is "entitled to full First Amendment protection, we now look to see if there is a sufficiently strong governmental interest served by [the statute's] restriction on them and whether the section is narrowly tailored to the evil which may be legitimately regulated." *FEC v. National Conservative PAC,* 470 U.S. 480, 496, 105 S.Ct. 1459, 1468, 84 L.Ed.2d 455 (1985), (hereinafter *"PAC"*).

The first step, identification of a strong governmental interest, presents a serious impediment to the proponents of section 85306. The gist of their argument is that Proposition 73 was passed as an overall attempt at campaign reform, and that section 85306 compliments the provisions concerning contribution limits which reflect the proposition's central purpose. Put another way, the defendants contend that the governmental interest which section 85306 seeks to address is to "level the playing field" on which candidates enter campaigns under Proposition 73's contribution limits. Defendant-intervenors cannot successfully maintain this argument. In *Buckley,* the Court specifically rejected it:

> It is argued ... that the ancillary governmental interest in equalizing the relative ability of individuals and groups to influence the outcome of elections serves to justify the limitation on express advocacy of the election or defeat of candidates imposed by [the] expenditure ceiling. But the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed "to secure 'the widest possible dissemination of information from diverse and antagonistic sources,'" and "'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"

---

**6.** "Any lawful purpose," as defined by Cal.Admin.Code tit. 2, § 18536.2(a), is circumscribed by the "personal use" laws of California Elections Code § 12401. These laws forbid the use of funds for "a substantial personal benefit" which "does not have more than a negligible political, legislative, or governmental purpose."

424 U.S. at 48–49, 96 S.Ct. at 649 (citations omitted).

Defendants seek to avoid the plain consequences of *Buckley* by equating the interests sought to be served by section 85306 with the interest served by contribution limits. They argue that section 85306 cannot be viewed in isolation, but that the court must examine the statute's purpose as a whole. Defendants seem to suggest that since the contribution limits provisions address the evil of corruption or the appearance of corruption engendered by large contributions, and since in some manner section 85306 effectuates these limitations, it likewise serves to limit corruption or the appearance thereof.

Defendants' argument is unpersuasive; it obscures both the nature of the speech addressed by the statute in issue and the character of the regulation of that speech imposed by the statute. In sum, the defendants ask the court to apply an ax where only a scalpel will do. As the Supreme Court has frequently admonished, " 'precision of regulation must be the touchstone' in the First Amendment context." *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 303 n. 11, 106 S.Ct. 1066, 1074 n. 11, 89 L.Ed.2d 232 (1986), *quoting NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340–341, 9 L.Ed.2d 405 (1963). *Buckley* taught that a close examination of both the particular speech regulated and the manner of regulation is required; it held on the basis of such an examination that a candidate's expenditure has a different character than a contributor's act of donating and, applying an identical "strict scrutiny" test to expenditures and contributions, concluded that different results obtained.[7] As

with the expenditure limitations at issue in *Buckley*, section 85306 directly affects a candidate's "quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley*, 424 U.S. at 19, 96 S.Ct. at 634. Money which, but for the ban, could be used on pamphlets and advertising, for example, cannot be so used, and dissemination of the political message is accordingly curtailed.

In short, section 85306 bans the expenditure of money directly on a campaign. Campaign expenditure by the candidate has discrete First Amendment characteristics. *California Medical Ass'n*, 641 F.2d at 627 (spending is entitled to the maximum protection when the speaker and the spender are one and the same). Ignoring those characteristics by failing to discretely analyze section 85306, and instead merging its consideration into an analysis of the general purpose of Proposition 73, contradicts both general First Amendment doctrine and the holding of *Buckley*. Section 85306 regulates a different form of speech than the contribution limits and must be analyzed separately. To justify the prohibition of expenditures commanded by section 85306, the defendants must demonstrate a "compelling state interest" justifying that section, as distinct from the interest potentially justifying contribution limits.

I will assume *arguendo* that section 85306 seeks to address the problem of political corruption or the appearance of corruption.[8] The question then is whether section 85306 in fact addresses those evils and, if so, whether it is narrowly tailored to that purpose. To answer those questions it is crucial to define those evils.

---

7. *Buckley* effectively found that a contribution limitation scheme could pass constitutional muster because limiting the amount of a contribution does not infringe on the "speech" interest inherent in giving. The contribution limitations of Proposition 73 are not now before the court. Nonetheless, defendants do not contend that Proposition 73's contribution limitations provide any greater justification for an expenditure limitation than the contribution limitations considered in *Buckley* provided the expenditure limitation considered and rejected there.

8. Although other arguments in favor of Proposition 73 were offered to voters, the anti-corruption in fact and appearance rationale is the only one sanctioned by the Supreme Court, *PAC*, 470 U.S. at 496–97, 105 S.Ct. at 1468–69, and the only one advanced by the FPPC. Defendant-intervenors argue that preserving the integrity of the electoral process is a separately sanctioned rationale, citing *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 788–89, 98 S.Ct. 1407, 1422, 55 L.Ed.2d 707 (1978). This appears to be yet another semantic distinction without a difference in substance.

The High Court has explained that "corruption is a subversion of the political process. Elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to themselves or infusions of money into their campaign." *PAC*, 470 U.S. at 497, 105 S.Ct. at 1468. Given this definition, it appears that the ban on expenditure of carryover funds does not address the issue of corruption at all. Under the teaching of *PAC*, the corrupting influence of large contributions results from their receipt and the hope of future receipts. "The hallmark of corruption is the financial quid pro quo: dollars for financial favors." *Id.* Yet a ban on only certain expenditures does not address the obligation arising from receipt; a debt owed is a debt owed, no matter the purpose for which the money may be spent. There is simply no link between the elimination of corruption and the ban on expenditures of money already received.

Moreover, to the extent that the "lawful purpose" regulations (see footnote 6) allow funds to be used indirectly for campaigning, the carryover ban again fails to address the problem of corruption as defined by the High Court. Under the regulations, funds may be used to pay off past campaign debts, for example, or to sponsor a ballot initiative related to a candidate's platform. If the obligations engendered by receipt and expenditure of large contributions is thought to be the evil to be controlled, no principled distinction can be drawn between direct and indirect expenditures. For the very same reason, section 85306 is not narrowly tailored to restrict the evil to be controlled.

Other reasons convince this court that section 85306 is overbroad. The statute overshoots its mark by banning expenditures of all money on hand, whether it was obtained in large or small amounts. If the essence of corruption is the quid pro quo, the amount tendered must be sufficient to give rise to an obligation. Here, the statute prohibits the expenditure of sums received by the candidate which were small enough so that they neither could corrupt or even give the appearance of corruption.

If, as Proposition 73 determines, individual contributions up to one thousand dollars do not pose a threat of corruption or the appearance of corruption, *see* footnote 3, then section 85306, which forbids the expenditure of funds on hand no matter how small the individual contributions making up that amount were, is not narrowly tailored to address the evil which may be regulated.

■  Defendant FPPC asks the court to avoid the latter conclusion by accepting its regulations limiting section 85306 to contributions exceeding Proposition 73's guidelines. These regulations do not cure the infirmity created by the "lawful purposes" clause considered above. Moreover, I do not believe I would be free to do so in any event. A state court of general trial jurisdiction has invalidated these regulations as beyond the FPPC's powers. *California Common Cause v. Fair Political Practices Commission*, Los Angeles County Superior Court No. C709383. That determination appears inevitable under state law. Under California law, "[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void." *Morris v. Williams*, 67 Cal.2d 733, 63 Cal. Rptr. 689, 433 P.2d 697 (1967). Section 85306 clearly bans all carryover funds, and the attempt to limit this effect would appear to be an usurpation of the legislative function. The FPPC's contention is premised on the well-known canon of statutory construction that courts should construe statutes where they may fairly do so to avoid decision as to their constitutionality. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). This contention is unavailing. As I have previously explained, "canons of construction extrinsic to the text" may not "be employed to create an ambiguity which is not inherent in the language" of the statute. *See Catholic Social Services v. Meese*, 664 F.Supp. 1378, 1382 (E.D.Cal.1987). As the Supreme Court has just reiterated, "interpretative canon[s] [are] not a license for the judiciary to rewrite language enacted by the legislature." *United States v. Monsanto*, —— U.S. ——, ——, 109 S.Ct. 2657, 2664, 105

L.Ed.2d 512 (1989), *quoting United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985). The FPPC's regulations cannot be given weight since the statute plainly intended to prohibit the expenditure of all carryover funds. *See PAC,* 470 U.S. at 499, 105 S.Ct. at 1469–1470.

Defendants also seek to justify the ban on expenditure of carryover funds by arguing that section 85306 assures the voters that all potentially corrupting contributions have been purged from the electoral process. On analysis, this is an argument that although the statute may not address the fact of corruption, it addresses its appearance. The boundaries of the notion of the appearance of corruption have not been fully developed. It is clear, however, that in order to insure that the First Amendment rights at stake here are given the breathing room they require, *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the scope of that evil must be narrowly defined. As the Supreme Court has taught, there must be real substance to the fear of corruption; mere suspicion, that is, "a tendency to demonstrate distrust ... is not sufficient," no matter how widely the suspicion is shared. *PAC,* 470 U.S. at 499, 105 S.Ct. at 1470. The vague notion of purging past obligations would not appear sufficiently precise to justify the wholesale restriction on political speech mandated by the statute. Moreover, even if the statute serves to avoid the appearance of corruption, because of the "lawful purposes" exception, it "does not provide an answer that sufficiently relates to the elimination of those dangers." *Buckley,* 424 U.S. at 45, 96 S.Ct. at 647.

Defendant FPPC also argues that to the extent section 85306 applies to independent expenditures, it can be construed as a contribution limit. So construed, section 85306 would prohibit political action committees from contributing pre–1989 funds to candidates, but would not prohibit them from spending such funds on a candidate's behalf. This construction is untenable; it contradicts the plain meaning of the statute as well as FPPC's own Regulation No. 18536.2(b). When a statute's purpose is plain, it is for the legislature, not the court, to alter it. *See Laborers' Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.,* 484 U.S. 539, 108 S.Ct. 830, 836, 98 L.Ed.2d 936 (1988). The ban on carryover funds as it applies to independent expenditures by political action committees is clearly unconstitutional. *Buckley,* 424 U.S. 1, 96 S.Ct. at 626; *Federal Election Commission v. Mass. Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); *PAC,* 470 U.S. 480, 105 S.Ct. at 1460.

Finally, defendant-intervenors argue that section 85306 serves the compelling state interest of providing equal opportunities to challengers and incumbents. This argument, made here under the aegis of the equal protection clause, in effect merely recharacterizes the "level playing field" argument rejected in *Buckley.* In light of *Buckley,* the defendants' argument cannot be entertained.

## IV

### INJUNCTIVE RELIEF

The relief sought by the plaintiffs takes the form of a permanent injunction prohibiting enforcement of section 85306. I have recently had occasion to examine the implications of the doctrine that not all violations of law automatically justify the awarding of injunctive relief. *See Wilderness Society v. Tyrrel,* 701 F.Supp. 1473 (E.D.Cal.1988). As I explained there, however, the consequences of that doctrine are very modest. Since considerations of public policy must weigh in determining the propriety of equitable relief, *id.* at 1479, and the Constitution is the ultimate expression of the policy of the United States, only the strangest of circumstances would suggest that a violation of the Constitution would not be subject to equitable relief. No such circumstances present themselves here.

Moreover, it is apparent that the application of conventional injunction doctrine demands the granting of the relief plaintiffs

seek in this case. "The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). The Court has taught that the abridgement of First Amendment freedoms constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976); *see also San Diego Committee v. Governing Bd.*, 790 F.2d 1471, 1473 n. 3 (9th Cir.1986). Because the constitutional violations demonstrated by plaintiffs are, by their nature, irreparable, and no adequate legal redress can compensate for the loss of political expression, plaintiffs are entitled to a permanent injunction.[9]

In accordance with the above, IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment is GRANTED. California Government Code section 85306 violates the First Amendment of the United States Constitution, and its enforcement is enjoined.

IT IS SO ORDERED.

---

**9.** I have repeatedly examined the Ninth Circuit's variously expressed standards for the granting of injunctive relief. *See e.g., Wilderness Society,* 701 F.Supp. at 1476–77. Given the plain propriety of granting injunctive relief once a violation of the First Amendment has been found under the circumstances of this case, no purpose would be served by rearticulating and applying those standards to the matter at bar.