J-A02023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TIERRA BUTLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| ISIAH SMALL | : | |
| | : | |
| Appellant | : | |
| | : | No. 545 MDA 2023 |

Appeal from the Order Entered March 15, 2023
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2021-CV-03186-AB

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:          **FILED: MARCH 4, 2024**

Appellant, Isiah Small, appeals from the order entered in the Dauphin County Court of Common Pleas, which found him in indirect criminal contempt ("ICC") for violating an order under the Protection from Abuse ("PFA") Act. We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> On January 28, 2022, [Appellee] Tierra Butler…obtained an extended final [PFA] order against [Appellant]. The PFA order provided that [Appellant] was to have no contact with [Appellee] and that [Appellant] was prohibited from posting any remarks about or images of [Appellee] on any social media. On February 27, 2023, it was alleged that [Appellant] violated the no contact PFA order by posting about [Appellee] on Facebook on or about February 1, 2023. [Appellee] was sent a photo of the Facebook post a few days later and reported the violation to the police. This matter came to the court for an [ICC] hearing on March 15, 2023. At the conclusion of the hearing, [Appellant] was found in contempt of the PFA order and sentenced to serve no less

than three months nor more than six months in the Dauphin County Prison.

[Appellant] filed a timely notice of appeal on April 11, 2023. This court then directed [Appellant] to file a concise statement of matters complained of on appeal, which he did on May 3, 2023.

(Trial Court Opinion, filed June 8, 2023, at 1).

Appellant raises one issue for our review:

Whether [Appellant's] [ICC] conviction must be vacated when the basis of the violation was an unconstitutional prior restraint on [Appellant's] First Amendment rights?

(Appellant's Brief at 4).

Appellant argues that PFA orders do not escape constitutional limitations. Appellant asserts that restraining **any** speech about a PFA plaintiff constitutes a prior restraint of speech which is subject to strict scrutiny. Appellant acknowledges that this Court has previously held that such restrictions are constitutional in **Commonwealth v. Lambert**, 147 A.3d 1221 (Pa.Super. 2016). Nevertheless, Appellant insists that this Court's decision in **Lambert** requires re-examination. Appellant avers that in **Lambert**, this Court held that the PFA order at issue was not content based, because the restraint was not on the content of the speech, but on the "target of the speech." (Appellant's Brief at 11) (citing **Lambert, supra** at 1229). Appellant claims, however, that the **Lambert** Court failed to "provide actual analysis as to whether the restriction, as stated, was content based." (**Id.** at 12). Appellant relies on authority from the Supreme Court of Ohio, concluding that

the "target" of such speech necessarily concerns the subject matter of the speech.

Appellant further contends that the United States Supreme Court has cast doubt on the "target" or "content" distinction. Appellant relies on *Packingham v. North Carolina*, 582 U.S. 98, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017), in which the United States Supreme Court held that a North Carolina statute prohibiting sex offenders from accessing social networking websites violated the First Amendment of the Constitution. Appellant suggests that *Packingham* casts doubt on the analytical framework of *Lambert*. Appellant also submits that the decision of *Constantakis v. Bryan Advisory Services, LLC*, 275 A.3d 998 (Pa.Super. 2002), overruled *Lambert* to the extent that *Lambert* considered the restraint imposed by a PFA order as restricting the "target" of the speech as opposed to its content.[1]

Appellant avers that the restriction in this case was not content neutral as the trial court opined. Appellant claims that because the PFA order limited his speech, it must be narrowly tailored to serve the compelling state interest of protecting PFA plaintiffs. Appellant insists the blanket ban on speech here was not narrowly tailored, because it did not merely restrict derogatory, harassing, specifically targeted, or threatening statements. Appellant

---

[1] Appellant incorrectly argues that *Constantakis* was decided by the Pennsylvania Supreme Court. (*See* Appellant's Brief at 16-18). To the contrary, *Constantakis* is a three-judge panel Superior Court decision.

emphasizes that the restraint on his speech did not allow for any distinction between kind commentary and harassment. Appellant concludes that this Court should overrule **Lambert** and hold that the PFA condition in this case is unconstitutional. We disagree.

In reviewing First Amendment cases, this Court must conduct a review of the entire record. **In re Condemnation by Urban Redevelopment Auth. of Pittsburgh**, 590 Pa. 431, 913 A.2d 178 (2006). Our standard of review is *de novo* and our scope of review is plenary. **See id.** As our Supreme Court has explained:

> The First Amendment provides that "Congress shall make no law…abridging the freedom of speech."[10]  U.S. Const. amend. I. …
>
> > [10] The First Amendment's protection of freedom of expression is made applicable to the states through the Fourteenth Amendment. **See Fiske v. Kansas**, 274 U.S. 380, 47 S.Ct. 665, 71 L.Ed. 1108 (1927).
>
> When the government restricts expression due to the content of the message being conveyed, such restrictions are allowable only if they pass the strict scrutiny test. That test is an onerous one, and demands that the government show that the restrictions are "(1) narrowly tailored to serve (2) a compelling state interest." **Republican Party of Minnesota v. White**, 536 U.S. 765, 775, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002).
>
> Yet, strict scrutiny is not applied simply because a plaintiff raises a claim that its freedom of expression has been curtailed. The High Court has recognized that where the governmental regulation applies a content-neutral regulation to expressive conduct, strict scrutiny is an inappropriate test to apply. **Texas v. Johnson**, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). The test which is applied to such content-neutral regulations was first

enunciated in the seminal case of ***United States v. O'Brien***, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In ***O'Brien***, the defendant was convicted of violating a statute which criminalized the act of destroying or mutilating a draft card. The defendant had burned his Selective Service registration certificate in order to convince people to adopt his anti-war beliefs. The defendant argued that the conviction could not stand as the statute criminalizing the destruction of draft cards ran afoul of the First Amendment.

In analyzing this claim, the ***O'Brien*** Court stated that where expressive and non-expressive conduct are combined in the same activity, "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." ***Id.*** at 376, 88 S.Ct. 1673. The ***O'Brien*** Court decreed that such "government regulation is sufficiently justified" if:

1) Promulgation of the regulation is within the constitutional power of the government;

2) The regulation furthers an important or substantial governmental interest;

3) The governmental interest is unrelated to the suppression of free expression; and

4) The incidental restriction on First Amendment freedoms is no greater than essential to the furtherance of that interest.

***Id.*** at 377, 88 S.Ct. 1673. The ***O'Brien*** Court found that all four prongs were met and thus denied the defendant relief.

***In re Condemnation by Urban Redevelopment Auth. of Pittsburgh,*** ***supra*** at 440-42, 913 A.2d at 183-84. ***See also Oberholzer v. Galapo***, 274 A.3d 738 (Pa.Super. 2022) (explaining that government regulation of speech is content based if law applies to particular speech because of topic discussed

or idea or message expressed; in other words, restriction is content based if either face of regulation or purpose of regulation is based upon message speaker is conveying; by contrast, if purpose of restriction is unrelated to expression of content, restriction is deemed neutral, even though speech restriction may have incidental effect on some speakers or messages, but not others; government regulation of expressive activity is content neutral so long as it is justified without reference to content of regulated speech).[2]

In **Lambert**, the court entered a PFA order directing that the appellant "may not post any remark(s) and/or images regarding Plaintiff, on any social network(s), including, but not limited to, Facebook, Myspace, Twitter, or any other electronic networks." **Id.** at 1223 (emphasis omitted). The appellant violated this provision of the PFA order, and the court convicted him of ICC. On appeal, the appellant alleged that the PFA order violated his First Amendment rights. Specifically, the appellant claimed the provision of the PFA order at issue: (1) represented an unlawful content based restriction on protected speech; (2) imposed an impermissible blanket prohibition on any remark regarding the plaintiff without demonstrating how it advanced a compelling government interest; (3) represented an impermissible prior restraint on protected speech; and (4) imposed an unconstitutionally vague and overbroad restriction on social media usage. **Id.** at 1227.

---

[2] On October 24, 2022, our Supreme Court granted allowance of appeal in **Oberholzer** at No. 154 MAL 2022.

In analyzing the appellant's claims, this Court explained:

> A review of the PFA Order at bar reveals that its proscription suffers from none of the infirmities [the a]ppellant alleges in his argument, for the proscription in question is not content-based, clearly advances an important governmental interest unrelated to speech, and is narrowly-tailored to advance this interest. It is undisputed that the proscription, itself, is limited to social and electronic network remarks "regarding Plaintiff." As written, therefore, the proscription is not concerned with the **content** of [the a]ppellant's speech but with, instead, the **target** of his speech, namely, Plaintiff, whom the court has already deemed the victim of his abusive conduct.
>
> An abuser's mere posting of any reference to his or her victim on social media, regardless of content, is, thus, automatically considered targeting tantamount to making impermissible **contact** with the victim. For an adjudged abuser to refer to a victim in publicly trafficked electronic forums, for whatever reason, is to exercise control over the victim in public, thus perpetuating the abuse of the victim. Whether a remark is patently innocuous or offensive, informational or nonsensical is of no moment under the order as written; it is the mere reference to the victim, alone, that triggers the proscription.
>
> Viewing the PFA Order in light the above-referenced intermediate test applicable to content-neutral, governmental restrictions on speech, we discern no infirmity with its proscription as stated. The provision is narrowly-tailored to advance the important governmental interest at stake, *i.e.*, the cessation of abuse in intimate or formerly intimate relationships…while remaining silent as to other channels of communication available to [the a]ppellant. Accordingly, we discern no merit to [the a]ppellant's constitutional challenge to the PFA order as it applied to the PFA in his case.

*Id.* at 1229 (emphasis in original).

Instantly, the trial court addressed Appellant's issue as follows:

> The prohibition of the PFA order in question is not content

based, advances an important governmental interest unrelated to speech, and is narrowly tailored to advance an important interest. It restricts [Appellant's] behavior by preventing him from posting "any remarks and/or images regarding [Appellee] on any social media networks, including but not limited to Facebook, Instagram, Twitter, or any other electronic networks." What matters here is who [Appellant's] words target, [Appellee], and not the actual content of those words. …

\* \* \*

Therefore, [Appellant] is free to express his words on any social media network only if they do not pertain to the protected [Appellee]. Such provision is narrowly tailored to advance the important governmental interest of protecting a victim from continued harassment and abuse.

Notwithstanding [Appellant's] argument regarding the persuasive nature of Ohio law, the court must adhere to the precedents of the U.S. Supreme Court…and the Superior Court of Pennsylvania…. Consequently, the trial court finds that [Appellant's] First Amendment rights have not been violated. …

(Trial Court Opinion at 3-4) (internal citations omitted).

We agree with the trial court's analysis. The PFA order in this case contained almost an identical restriction to the one at issue in **Lambert**, where the trial court merely prohibited Appellant from posting **about Appellee** on social media. **See Lambert, supra**. Thus, under **Lambert**, the restriction was content neutral, and not content based as Appellant suggests. **See id.** Although Appellant urges us to overrule **Lambert**, as a three-judge panel, we are bound by the prior precedent of this Court. **See Commonwealth v. Pepe**, 897 A.2d 463 (Pa.Super. 2006), *cert. denied*, 555 U.S. 881, 129 S.Ct. 197, 172 L.Ed.2d 141 (2008) (explaining that three-judge panel of Superior

- 8 -

Court is bound by existing precedent and lacks authority to overturn another panel decision, except in circumstances where intervening authority by our Supreme Court calls into question previous decision of this Court).[3]  Further,

---

[3] Although Appellant contends that **Constantakis, supra** overruled **Lambert**, we reiterate that one three-judge panel disposition of this Court cannot overrule another three-judge panel disposition of this Court, in the absence of intervening authority by the Supreme Court.  **See Pepe, supra**.  Further, **Constantakis** is distinguishable from **Lambert** and the facts of this case.  In **Constantakis**, this Court addressed the constitutionality of injunction orders, which enjoined the appellants from making false, unsubstantiated and defamatory statements about the appellees.  This Court held that the injunction orders constituted an unconstitutional prior restraint under Article I, Section 7 of the Pennsylvania Constitution, which provides broader freedom of expression than the federal Constitution.  **See Constantakis, supra** at 1012.  This Court applied the Pennsylvania Constitution in **Constantakis** because the appellants focused on Article I, Section 7 in their brief.  **See id.** at 1012 n.14.  We further note that the **Constantakis** Court did not discuss content based versus content neutral restrictions.  **See id.**

Unlike in **Constantakis**, Appellant does not make a specific argument under Article I, Section 7 of the Pennsylvania Constitution on appeal, aside from mentioning the **Constantakis** Court's discussion of the Pennsylvania Constitution.  (**See** Appellant's Brief at 17).  In any event, this Court in **Lambert** expressly stated that the PFA order restriction in that case would not run afoul the Pennsylvania Constitution where "the PFA Order's proscription could not advance the important governmental interest of preventing victim abuse in social media by a less intrusive manner than simply prohibiting remarks regarding the victim."  **Lambert, supra** at 1229 n.5.  The facts of this case are squarely aligned with **Lambert** and distinguishable from **Constantakis**.  **See id.**  Thus, Appellant's reliance on **Constantakis** affords him no relief.

Appellant's reliance on the United States Supreme Court's decision in **Packingham** is also misplaced.  In that case, the North Carolina statute at issue prohibited sex offenders from accessing any "commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages."  **Packingham, supra** at 101, 137 S.Ct. at 1733.  The Court held that "[e]ven

*(Footnote Continued Next Page)*

we are not bound by the law in other jurisdictions such as Ohio. ***See Commonwealth v. Seskey***, 170 A.3d 1105 (Pa.Super. 2017) (explaining well-settled law that decisions of other states' courts are merely persuasive authority).

Because the restriction in this case was content neutral, it was not subject to the heightened strict scrutiny test. ***See Lambert, supra***. We agree with the trial court's analysis that the restriction satisfied the intermediate scrutiny test as set forth in ***O'Brien***. ***See In re Condemnation by Urban Redevelopment Auth. of Pittsburgh, supra***; ***Lambert, supra***. Therefore, Appellant's constitutional challenge fails. Accordingly, we affirm.

Order affirmed.

---

making the assumption that the statute is content neutral and thus subject to intermediate scrutiny, the provision cannot stand." ***Id.*** at 105, 137 S.Ct. at 1736. "[T]he statute here enacts a prohibition unprecedented in the scope of First Amendment speech it burdens." ***Id.*** at 107, 137 S.Ct. at 1737. Thus, the Court held that North Carolina could not enact a complete bar to the exercise of First Amendment rights "on websites integral to the fabric of our modern society and culture." ***Id.*** at 109, 137 S.Ct. at 1738. In so holding, the Court was clear to say that its opinion "should not be interpreted as barring a State from enacting more specific laws than the one at issue." ***Id.***at 107, 137 S.Ct. at 1737. For example, "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." ***Id.***

Unlike in ***Packingham***, the PFA provision at issue in this case merely prohibited Appellant from posting about Appellee on the internet. ***Compare Packingham, supra***. Thus, Appellant's reliance on ***Packingham*** is inapposite.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/04/2024